Rocco *v.* Ellsworth Collieries Co., Appellant.

Argued October 16, 1933. Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadt-feld, Parker and James, JJ.

*Rufus S. Marriner*, and with him *John F. Wiley* of *Marriner & Wiley*, for appellant.

*H. Russell Stahlman*, for appellee.

OPINION BY PARKER, J., February 1, 1934:

A statement of the facts will show that the question involved in this compensation case is the same as that which we considered in McFadden v. Lehigh Navigation Coal Company, 111 Pa. Superior Ct. 501, in which case we have handed down an opinion this day. Was the death of Charles Rocco caused by an "accident" as that term is used in the Workmen's Compensation Act of 1915 (77 PS 1)?

Charles Rocco, then 53 years of age, was at work on the morning of October 27, 1931, with his son, Anthony Rocco, in a room in the defendant's mine. After spending about twenty-five minutes in loading a car with coal, Charles Rocco started the boring of a hole to be used in firing a shot. The operation was performed with a breast auger and the hole was being drilled in slate at an angle slanting upward. After boring a few minutes, the deceased instructed his son to prepare some clay to be used when the shot was placed, stating that "he would hurry on with the hole so we wouldn't miss the shot firer." Anthony left the room and went to his dinner bucket to get a "bite" before preparing the clay. Just as he started to eat he heard his father call to him to bring some water, and on going to the room found his father kneeling

down, resting on his right knee, and leaning against the coal car. He was "sweating a lot" and complained of his right side. The father was helped out of the room to an entry where he soon became unconscious. After a time he was taken out of the mine and removed to his home and from there to a hospital where he died about 3:50 p. m. the same day. It is not disputed that the immediate cause of death was a cerebral hemorrhage. Two of the sons of the decedent testified that their father was apparently healthy and strong prior to the day of his death. The expert testimony on the subject of arteriosclerosis was extensive and enlightening, and there was evidence from which it could properly be concluded that the decedent showed evidences of arteriosclerosis at the time of his death. Eliminating the deduction that might be made from the fact that there was a cerebral hemorrhage, the external appearances did not disclose any evidence that the hardening of the arteries had developed more than might have been expected in a man of his age.

As our immediate problem is to determine whether there was any evidence of an accident, we will refer more particularly to the precise work being performed on the day in question. In drilling the hole Rocco was using an auger which weighed 12 to 15 pounds and consisted of a breast plate, brace and bit. The breast plate at the beginning of the drilling rested on the operator's body between the thighs. As the hole slanted upward in the slate, the breast plate arose in height and would rest at a higher point on the operator's body as the hole became deeper. It was necessary to push upon the breast plate and at the same time operate the crank on the brace. This precise form of labor was a part of the regular routine of the employe's labors and had been performed by him as part of his daily work for more than a year. There was not any evidence of any mishap or unusual occurrence. Two sons of the deceased described the work

as hard and difficult; that it was harder to drill through slate than coal, one of them saying: "That kind of work make you sweat. Sometimes that auger doesn't cut good and you have to put your force *again* it."

As the evidence discloses that the deceased had arteriosclerosis which could be observed by the eye of a skilled physician and by palpation, and that the decedent was performing the same character of labor in the same manner as he had been doing for a number of years, and as there was here no evidence of a mishap or unusual occurrence, we might dispose of the case by referring to the conclusion arrived at in the McFadden case where we said: "Where an employe while in the course of his employment is performing hard labor, but of the same kind and in the same manner as he had been doing it for several years, and while so engaged is stricken with apoplexy and dies suddenly from a cerebral hemorrhage, the performance of such hard labor is not of itself over-exertion as that word is used in our cases, and is not an accident as that term is used in the Workmen's Compensation Law." As we have had the benefit of an able opinion by the learned president judge of the court below and counsel have furnished us with very complete expert testimony on the subject of arteriosclerosis, they are entitled to a more specific answer to the arguments made and an examination of the facts presented in this case.

Apparently with the intention of predicating an accident thereon, it was assumed that Rocco was working faster than usual in drilling the hole. There is, however, no competent evidence to support such conclusion. The only statement on the subject was that of the son, Anthony Rocco, who said that when about to drill the hole, the father said: "You hurry and make some clay and I'll hurry with this hole so we'll catch the shot firer." The witness was within sight of de-

cedent while he was doing the greater portion of the drilling and was in such close proximity the rest of the time that he could hear the drilling while his father was working, yet there is not a scintilla of evidence that the father did, in fact, exert more force or expend more energy than he usually did. Declarations as to future intention have been received at times under a rule of necessity, but where, as here, the very witness was in a position to testify with relation to what did in fact take place, we may not infer from the mere statement that he' said he was going to hurry that he did in fact hurry. It will be also noticed that the statement as made was rather a casual one which might have been directed as much toward encouraging the boy to be diligent and prepare his part of the work as to anything that he intended to do. This testimony will not support a finding that the decedent did in fact expend unusual energy (Diriscavage v. Penna. Coal Co., 96 Pa. Superior Ct. 189).

The major premise upon which the conclusion of the court below is based is as follows: "That the occurrence of either cerebral hemorrhage or heart strain as the result of over-exertion during the course of employment is an 'accident' within the meaning of the Workmen's Compensation Law, and hence death brought about thereby is compensable, has been well settled by the reported decisions." It must be borne in mind that this general statement is auxiliary to a more fundamental principle, stated in the late case of Lacey v. Washburn & Williams Co., 309 Pa. 574, 580, 164 A. 724, as follows: "The rule deducible from our decisions limits the right to recover compensation to cases where injury or death is due to some unexpected or fortuitous event." In one of our cases, O'Neill v. Lehigh C. & Nav. Co., 108 Pa. Superior Ct. 425, 165 A. 60, we referred to the happening necessary to constitute an accident as "any undesigned, unforeseen, sudden or unexpected occurrence, any mishap, un-

toward or fortuitous event, outside of the usual course of things.'' The labor here performed was not unusual, nor was there any unexpected or fortuitous event or mishap in the drilling of this hole. As we have pointed out in the McFadden case, over-exertion is a relative term and as used in our cases is not to be given its broadest popular meaning. The Supreme Court in the case of Gausman v. Pearson Co., 284 Pa. 348, 354, 131 A. 247, made it clear that even though a physician attributed a stroke to claimant's exertion in the performance of his work and expressed the opinion that but for the work it would not have happened at that time, nevertheless that alone would not constitute an accident. In any event the expert opinion of the physician was not material until there was some evidence of an accident. Over-exertion must be given a more limited meaning and must, in any event, be confined to such cases as furnish the basis for a conclusion that there has been ''an unforeseen or fortuitous event.''

The judgment of the lower court is reversed and here entered for the defendant.