## Strode *v.* Donahoe's Fifth Avenue Store (et al., Appellant)

Argued April 16, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

232

*James J. Burns, Jr.,* for appellant.

*Murray J. Jordan,* with him *Fred J. Jordan,* for appellee.

OPINION BY JAMES, J., July 15, 1937:

In December, 1934 claimant filed a petition for compensation alleging that he suffered injuries as the result of an accident suffered in the course of his employment. Hearings on his petition were concluded on May 13, 1935, and on May 17, 1935 the referee made an award in favor of claimant for total disability, which, on appeal, was affirmed by the board. On May 20, 1935 claimant died. On January 4, 1937 the court of common pleas dismissed the appeal and entered judgment upon the award for $4,470, the full period of 500 weeks. Later, this judgment was modified to cover compensation for the decedent to the time of his death, without prejudice to the rights which claimant's widow has against the defendant, for which a petition is now pending.

The questions involved on this appeal are: (1) Did the claimant establish the happening of an accident; and, (2) was the medical testimony sufficient to establish a causal relationship between the alleged accident and claimant's disability.

John M. Strode had been employed at Donahoe's Fifth Avenue store—a large food store in the City of Pittsburgh—as a fish salesman for about six weeks. On

the morning of November 2, 1934, he reported for work, at twenty minutes to seven, and was directed to take out the glass doors of the fish compartments, located on the first floor of the premises. After taking out two of the doors, he found that the second two were stuck and would not open within about six inches. They were sliding doors, and in order to remove them, it was necessary to move each door to the end of the compartment, lift it up, twist it sidewise and then take it out. In describing the removing of the compartment doors, claimant testified as follows: "Q. You shook the door and then, what did you do? A. I shook the door for to loosen the ballbearings which I thought was frozen on account of the salt in the ice. Q. Then what happened? A. Then I pulled the door in this manner and I steadied my weight against it and braced myself and pulled with all was in me. Then the next position I found myself in, back against the wall and sliding down the wall and found myself going down. Q. Did you fall entirely to the floor? A. I fell entirely to the floor." He was assisted to the lavatory in the basement by a co-employee, where he remained for some time and then returned to his place of employment, where he reported to his superior that he was unable to remove the two doors because they were stuck and he was ordered to take a pair of fish shears and pry them out. Claimant took the fish shears, braced up the doors of the compartment, removed one of them, and then removed the second door and while in the act of carrying it over, fell to the floor, from where he was carried to a rest room and later removed to his home, where he received medical treatment from his family physician, Dr. D. A. Atkinson. This doctor's diagnosis was, that claimant was suffering from a coronary occlusion and that his disability was total and permanent.

The testimony of the physicians, two called by claimant, and three by defendant, was irreconcilable. Claim-

ant had been treated by Dr. Atkinson and Dr. C. W. Cummings during 1933, Dr. Atkinson testifying that he found claimant suffering from high blood pressure, and Dr. Cummings, that he had made a diagnosis of aortitis, arteriosclerosis and hypertension; both doctors admitting that his condition was a progressive one. During this period, and until June 2, 1934, claimant carried on his own business as a butcher, from which time he was engaged in odd employments, until the date of the injury.

Dr. Atkinson testified: "Q. Now, Doctor, I am trying to get the causal connection between the man's disability at that time and the alleged accident he gave you? A. The exertion could produce that. Q. Did it, in your opinion? A. I think that it did, yes." Dr. H. N. Malone, also called by claimant, testified: "My impression was that he had done only light work, cleaning and selling fish, occasionally lifting some thirty-pound boxes, but on this morning, in addition to lifting these boxes, he was assigned the job of getting the doors open, which brought about the stress which precipitated the attack. The final conclusion that one must draw from the case is that there is, undoubtedly, a direct causal relationship between the unusual stress and strain which he underwent on November 2, 1934 and which immediately precipitated the condition from which he is now suffering and which has rendered him permanently disabled and his life shortened;" and later, in reply to the following questions: "Q. And in your professional opinion, is that the cause of his present disability? A. His present disability is definitely linked up with the factor of stress or strain. Q. When you say that, do you mean that this particular stress or strain immediately precipitated his collapse and onset of his acute disability? A. Yes." Dr. Cummings, who did not treat claimant after the injury, would not say that the exertion claimant went through either then

or any other time would be the cause of the coronary occlusion. Dr. G. F. Berg and Dr. C. M. Pauley, called by defendant, were of the opinion that the exertion did not cause the coronary occlusion, but, on the contrary, that the exertion employed would be beneficial.

It has been repeatedly held that if death or injury comes during the course of employment in an ordinary way, natural to the progress of the disease with which one is afflicted and with which one was smitten before the accident, there can be no recovery; but if the demise or injury is brought about by some mishap or accident happening during the course of the employment, the fact that deceased had a chronic ailment which rendered him more susceptible to such injury than an ordinary person would be, will not defeat his right to compensation. It has been further held that an over-exertion in the ordinary course of an employment constitutes an accident within the meaning of the compensation act. We have recently fully discussed the question of over-exertion with relation to an accident in *Hill v. Thomas S. Gassner Co.*, 124 Pa. Superior Ct. 217, 188 A. 382; *Foster v. State College Boro.*, 124 Pa. Superior Ct. 492, 189 A. 786, and *Viehdorfer v. Cherry Run C. M. Co.*, 125 Pa. Superior Ct. 201, 189 A. 782.

The facts of the present case do not bring them within the recent cases of *Cowell v. F. W. Woolworth Co.*, 119 Pa. Superior Ct. 185, 180 A. 752; *Falls v. Tennessee Furniture Co.*, 122 Pa. Superior Ct. 550, 186 A. 272, and *Witt v. Witt's Food Market*, 122 Pa. Superior Ct. 557, 186 A. 275, in all of which the injury occurred while the employee was performing his labor in the usual manner and without over-exertion. In those cases, the sprain, strain or twist was held to be the accident. In *McFadden v. Lehigh Navigation Coal Co.*, 111 Pa. Superior Ct. 501, 170 A. 314; *Rocco v. Ellsworth Collieries Co.*, 111 Pa. Superior Ct. 508, 170 A. 316, and *Kincel v. Feraco Const. Co.*, 113 Pa. Superior Ct. 61,

172 A. 11, the labor which the employee was performing was of the same kind and in the same manner as he had previously been engaged in.

Claimant's usual duties were to clean and sell fish in the store and to go into the cellar to prepare the fish for the counters. The heaviest work he performed was at times to lift boxes of fish weighing thirty pounds. In doing this work, no unusual effort was required, but in removing the compartment doors, it was necessary that claimant brace himself and pull with all that was in him. To say the least, by thus exerting himself, he was doing his work in an unusual manner. As President Judge Keller said in *Foster v. State College Boro,* supra, (page 499) : "It must not be thought that the employee had never before done what he was doing when his over-exertion resulted in death; but it was not his usual regular, everyday work." The use of claimant's entire strength was clearly an over-exertion, and thus an accident within the terms of the compensation act.

Although the medical testimony was conflicting, it is not our duty, on appeal, to weigh the evidence, but to examine the record to determine whether there was competent testimony to support the conclusion of the referee and the board. In our view, the testimony of Dr. Atkinson and Dr. Malone was sufficient to base the findings of the referee that claimant was totally disabled as the result of an accident in the course of his employment.

Judgment affirmed.