Yankunos, *v.* Hinds Catering Company (et al., Appellant).

Argued October 11, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Herbert G. Marvin,* with him *Ralph N. Kellam,* for appellant.

*Louis Wagner,* with him *R. A. Smith* and *T. J. Clary,* for appellee.

Opinion by James, J., January 27, 1938:

Anna Yankunos, widow of Joseph Yankunos, filed a claim petition against his employer alleging that as the result of an accident occurring on May 28, 1935, he died on July 5, 1935. The referee disallowed compensation. Upon appeal, the board set aside the findings of the referee and found as follows: "11. That the decedent's death was caused by a complication of coronary occlusion as a result of the injury sustained on May 28, 1935. 14. There was sufficient testimony produced by the claimant to substantiate the accident of May 28, 1935, while lifting a 40-quart can of milk, causing the strain of the muscles of his shoulder, back, arms, and chest, causing an acute coronary occlusion," and made an award in favor of the claimant, which was affirmed by the court of common pleas. From the judgment entered on the award, the insurance carrier has appealed.

Claimant's husband had been employed at defendant's restaurant for about twenty-nine years, and on the day of the accident, he was engaged as a coffee man. One of his regular duties was to mix milk and cream, which required the lifting of a forty-quart can of milk, weighing approximately one hundred pounds. In performing this work, he was sometimes assisted by a fellow workman. On May 28, 1935, while engaged in the mixing, decedent requested another employee to assist him in lifting one of the cans, but upon being informed that he was busy, decedent lifted the can himself. Later in the day, this employee observed decedent was not his usual self in that he refrained from talking and looked sick. On the following day, decedent was not required to work and he remained in bed until 8:30 in the evening, complaining of a headache and nausea. Later that evening he became violently ill and Dr. E. L. Straub was called, who made a diagnosis of a grippe infection. On May 30, decedent was again examined by Dr. Straub,

who found his chief complaints consisted of muscular pains in the chest, back and shoulders. On this occasion, he stated to Dr. Straub he had lifted a heavy can of milk at his work. On June 2, Dr. Straub again saw decedent, who still complained of muscular pain, and he advised hospitalization, which was not followed. Two days later decedent walked several blocks to the office of Dr. Straub, who prescribed a tonic. On June 17, 1935, he was examined by Dr. J. J. Toland.

On July 5, 1935 decedent was visited by Michael Stigiwro, a fellow employee, who was invited by decedent to make an inspection of his home. He and decedent went upstairs and downstairs, after which they proceeded to the cellar where decedent threw a dog out that had been causing a disturbance. Shortly afterwards, decedent grabbed his side saying, "It got me again," and a few minutes later died. Dr. Straub pronounced the cause of death as coronary thrombosis and was of the opinion that it might easily have been induced by the picking up of the dog in a fit of anger, but he was unable to make up his mind as to whether the strain suffered on May 28, 1935 was the cause of death. Dr. Joseph Edeiken, called by claimant, was of opinion that the "coronary occlusion followed a strain in the lifting of this milk and was directly related to it, that a coronary occlusion developed afterwards and that death from coronary occlusion occurred approximately five weeks thereafter."

The main question raised by appellant is that the only evidence of an accident consisted of hearsay statements made several days after the accident. When decedent's daughter was being examined by claimant's counsel, an objection was raised to a statement made to the doctor by her father on May 30, which was overruled and the daughter testified as follows: "A. Told the doctor he had lifted a forty-quart can of cream at his place of employment." In passing upon the objection, the rec-

ord shows the following: "By the Referee: We will permit the question to be answered only for the purpose of noting on the record—to be stricken but not expunged from the record—but I will not take it into consideration in determining whether or not there was an accident. By Mr. Wagner: The question, of course, without the answer won't put the Board in position— By the Referee: It will let the Board rule on my ruling." Later in her examination, without objection, this witness testified as to her conversation with the manager of the restaurant, when she informed him that deceased had lifted the can of cream. Continuing her testimony, objection was raised to a statement made to her by the mother, that decedent said he would stay in bed and rest, which was overruled. When counsel objected to a statement made by decedent on May 30, to a witness, a practical nurse, the referee stated, "We will take it under the same ruling as previously." From these rulings, we are unable to conclude that counsel for the insurance carrier was so misled as to justify his failure to object to the testimony of the manager of the restaurant, as to a statement made to him by decedent's daughter on Thursday, May 30, 1935, that her father had hurt himself, lifting a can of cream on the Tuesday previous, or to the testimony of Dr. Straub that decedent had given him a history of lifting a heavy can of milk at his work shortly before he became ill. The rulings made by the referee can only be considered with reference to the testimony then submitted and cannot be regarded as indicating a general purpose of admitting all hearsay testimony, subject to subsequent determination of its admissibility. It is the duty of counsel to object to the introduction of testimony as it is offered, unless from the record it clearly appears that the rulings made as to particular questions shall be applicable to all questions asked on the same subject matter and to all witnesses called. Conceding, how-

ever, that counsel was misled, it clearly did not warrant him in confirming these statements by introducing as part of his own case the following testimony by Michael Stigiwro: "A. Why, I was visit him and I don't know nothing about accident just know what he tell me, I was there visit him, he say he sick, he says, 'While lift can milk I strained myself, I feel bad.'"

Under this state of the record, the following language of President Judge KELLER, in the case of *Broad St. Tr. Co., v. Heyl Bros.,* 128 Pa. Superior Ct. 65, 71, 193 A. 397, is particularly applicable: "Our Supreme Court held in *Poluski v. Glen Alden Coal Co.,* 286 Pa. 473, 476, 133 A. 819—and the ruling was re-affirmed in *Harrah v. Montour Railroad Co.,* 321 Pa. 526, 528, 184 A. 666—that 'Where evidence, incompetent as hearsay, is admitted without objection and is relevant and material to the fact in issue, the court may give it the value of direct evidence and on' it base a finding of fact.'" Further, by defendant's own testimony, a strain from the lifting of the can of milk could have been found by the board.

In its opinion, the court below said: "On the evidence of the decedent's prior condition of health, the lifting of the can, the strain, the appearance of illness which followed soon thereafter, the actual illness which manifested itself the next day and subsequently, and the testimony of the physician and heart specialist, the Board's finding cannot be said to have been unwarranted." To this reasoning, we need not add anything further.

Judgment affirmed.