Opinion by
 

 Stadteeld, J.,
 

 Claimant in this case filed a petition for compensation, alleging that her husband, John Sachs, fell and was killed as the result of an accident while in defendant’s employ. Defendants filed an answer denying death resulted from any accidental injury, and the case thereafter came before a referee for a hearing.
 

 The referee disallowed compensation. The Workmen’s Compensation Board reversed the referee and
 
 *140
 
 made an award. On appeal, the court of common pleas reversed the board in an opinion by Bok, P. J., and entered judgment for the defendant. This appeal followed.
 

 The burden is on the claimant to prove by competent evidence some accidental violence or some unexpected and unforeseen occurrence, mishap, or untoward event:
 
 Lichvan v. Jamison Coal Corp.,
 
 122 Pa. Superior Ct. 309, 186 A. 191, and cases therein cited.
 

 The controlling question in this appeal is whether there is competent evidence to support the conclusion of the Workmen’s Compensation Board, reversed by the court below, that the employee’s death resulted from an “accident” within the meaning of the Workmen’s Compensation Act of June 2, 1915, P. L. 736 as amended.
 

 Claimant’s evidence was as follows: On the evening of July 26, 1936, at 8:30 o’clock, decedent, a man sixty years of age, employed as a fireman and engineer at defendant’s mill, was found by a watchman unconscious and lying on his back with a broom across his chest, in front of the boiler at defendants’ plant. Efforts to revive him were unsuccessful; his body was removed to the Episcopal Hospital, and a post-mortem examination performed the following day revealed the cause of death as coronary occlusion. The autopsy report further described a heart condition as “arteriosclerosis aortitis, calcareous coronary sclerosis with occlusion.”
 

 Decedent had complained to the watchman of a slight pain in his chest when he first came on duty at six o’clock the same evening of his death, and had complained of dizzy spells for a year prior. His duties were to clean the fires, which he customarily did with a steel rake, and to run the engines, but at the time of his death the plant was not working and no engines were running. The watchman took no notice of the fire in the boiler at the time he discovered the decedent, but some time later observed that the fire was shoved back.
 
 *141
 
 He described the weather as a hot night, bnt not so hot as it had been a week earlier, when decedent had been away on vacation.
 

 Ho other evidence of an accidental injury was presented. Claimant, however, offered the testimony of a physician, Dr. Margolies, a specialist in cardiology, who had read a copy of the autopsy report and expressed an opinion that as decedent was in an advanced stage of arteriosclerosis, the effort involved in his work was the immediate precipitating cause of the coronary occlusion. In answer to a question whether he meant the effort of that particular day, or within a few minutes before the occlusion took place, or within the course of a few weeks prior thereto, this witness stated decedent was engaged in a laborious occupation, and perhaps on this particular night his usual strenuous exertion was the immediate, precipitating cause of a thrombosis; as to when the occlusion may have started, however, he said he could not tell, but, referring to the testimony of the watchman that decedent had complained of pain when he first came on duty, the witness said perhaps that was the beginning of the occlusion. In his opinion the occlusion was due to a thrombosis; however, claimant later called Dr. Moriarty, Coroner’s physician, who had performed the autopsy on the decedent, and who testified that he had examined all the organs, including the heart and coronary arteries, that there was no thrombosis, and that the occlusion was of a materially advanced stage and calcareous.
 

 On this evidence the referee found death was not due to or contributed to by any accident suffered by decedent in defendant’s employ, and disallowed the claim.
 

 On appeal, the board set aside certain of the referee’s findings and substituted its own, upon which it based an award. Specifically, it found that decedent had a chronic heart condition, a sclerosis of the vessels; that death resulted from coronary occlusion; that during
 
 *142
 
 the hour preceding his death he was engaged in shifting the fire back under the boiler; that this was part of decedent’s regular work but required considerable physical exertion; that he began sweeping the floor after finishing the fire and while so engaged, collapsed and died; that the immediate precipitating cause of the occlusion was the physical exertion required in using the heavy steel rake to shift the fire back.
 

 After a very careful examination of the entire record, we find no evidence to support the conclusion that an accidental injury caused decedent’s death. The findings of the board mention no accident, no event fortuitous or uncommon, no exertion beyond that usually incident to the decedent’s regular tasks. In fact, the findings of the board negate the possibility of such conclusions by assigning as the cause of death the “physical exertion required in using the heavy steel rake to shift the fire,” which was, however, “part of the decedent’s regular work.” Nor was there any evidence from which the inference of an accident might have been drawn. There was no unusual exertion not required by the decedent’s ordinary duties, as in
 
 Strode v. Donahoe’s Fifth Ave. Store,
 
 127 Pa. Superior Ct. 231, 193 A. 86, and in
 
 Barr v. Atlantic Elevator Co.,
 
 124 Pa. Superior Ct. 57, 187 A. 815.
 

 Appellant relies mainly on the cases of
 
 Calderwood v. Consolidated Lumber & Supply Co.,
 
 91 Pa. Superior Ct. 189, and
 
 Barr v. Atlantic Elevator Co.,
 
 supra. In the former case, decedent was pulling a heavy oak timber turning a windlass by a crank in the course of rebuilding a tipple, when he suffered an acute dilatation of the heart. There was expert opinion that this condition was brought about by the exertion of the deceased in turning the windlass. Under such evidence, this court had no difficulty in holding that decedent had met with an accident within the meaning of the Workmen’s Compensation Act, as his injury had resulted
 
 *143
 
 from Ms exertion in cranking the windlass, and the evidence was undisputed that he had been performing strenuous work. This was a clear case of accidental injury from unusual exertion. Further than that, we might point out that the board, in the Calderwood case, did not find decedent was suffering from a chronic heart condition as it has found here.
 

 Barr v. Atlantic Elevator Co.,
 
 supra, is likewise easily distinguishable. Claimant’s husband was employed on inspection and repair work. He was in good health, and the post-mortem held after his death revealed no heart condition that was unusual for a man of his age. On a certain day, he was called to put some new cables on an elevator, in the course of which work he carried four cables, weighing sixty pounds apiece, from the fourth floor up a flight of stairs, sixteen or eighteen feet high, to the roof, where he stretched them out. Coming down from the roof, he complained of a sharp pain in his heart. It was later found that he had suffered a coronary occlusion, from which he died. There was no testimony that the carrying of cables of this weight up flights of stairs was in the line of his usual and ordinary work.
 

 Yankunos v. Hinds Catering Co.,
 
 130 Pa. Superior Ct. 187, 196 A. 520, also cited by appellant, has no application here. There was evidence there to sustain the board’s finding that the decedent lifted a forty-quart can of milk weighing one hundred pounds, causing strain of the muscles of the shoulders, back, arms and chest, and an acute coronary occlusion. The court approved the reasoning of the court below that the board’s finding was warranted on the evidence of decedent’s prior condition of health, the lifting of the can, the strain, the appearance of illness which followed soon thereafter, and expert medical testimony that definitely connected the lifting with the coronary occlusion.
 

 
 *144
 
 As this court and our Supreme Court have repeatedly-said, where an employee, in the course of his employment, is performing hard labor but of the same kind and in the same manner as he had been doing it for several years, and is suddenly stricken and dies from a cerebral hemorrhage or heart disease, performance of such hard labor is not of itself over-exertion, and there is not an accident within the meaning of the Workmen’s Compensation Act:
 
 McFadden v. Lehigh Navigation Coal Co.,
 
 111 Pa. Superior Ct. 501, 170 A. 314;
 
 Mooney v. Yeagle,
 
 107 Pa. Superior Ct. 409, 164 A. 82;
 
 Pelusi v. Mandes,
 
 109 Pa. Superior Ct. 439, 167 A. 456;
 
 Gausman v. R. T. Pearson Co.,
 
 284 Pa. 348, 131 A. 247.
 

 In the McFadden case, decedent was helping to drag a stick of timber up a rock chute which arose at an angle of forty degrees a distance of fifty-five feet when he suddenly collapsed. He was taken to a hospital and found to be suffering with a cerebral hemorrhage. Decedent had been engaged in his usual work. A doctor called testified that in his opinion the exertion in moving the stick of timber was a marked contributory factor in decedent’s death from apoplexy. The board awarded compensation and the court of common pleas sustained the award. On appeal, this court reversed, and in the course of his opinion, Judge Parker observed: “...... hard labor, when labor of the same kind and intensity has been regularly and usually performed by the employee, is not of itself an accident. If the law is as contended by appellee, a hod carrier called upon to carry a heavy load up a succession of ladders, or a woodsman felling trees, or a blacksmith or his helper hammering iron, although he has done the same work for years, if stricken with a heart strain or apoplexy while so engaged and dies, would be entitled to compensation. This would lose sight entirely of the fact that there must be an accident as the basis of compensation. The hod carrier, woodsman, or blacksmith would be doing precisely
 
 *145
 
 the same
 
 kind of labor
 
 he had performed for a lifetime. Surely no one could contend that the performance of this labor would constitute an unexpected or fortuitous, untoward or unusual event....... (pp. 504, 505) ......We have been unable to find any case involving heart strain or apoplexy where it has been held that the doing of the regular labor usually performed by the employee, even though hard labor, is an unexpected or fortuitous event, (p. 506)”
 

 In
 
 Rocco v. Ellsworth Collieries Co.,
 
 111 Pa. Superior Ct. 508, 170 A. 316, the question involved was the same ■as in the McFadden case. There a miner was stricken and died from cerebral hemorrhage while boring a hole in slate, using an auger which weighed twelve to fifteen pounds. There was evidence that it was harder to drill through slate than through coal. Decedent had arteriosclerosis. In reversing the court below and entering judgment for defendant, this court, again speaking through Judge Parker, said, at p. 513: “The labor here performed was not unusual, nor was there any unexpected or fortuitous event or mishap in the drilling of this hole. As we have pointed out in the McFadden case, over-exertion is a relative term and as used in our cases is not to be given its broadest popular meaning. The Supreme Court in the case of
 
 Gausman v. Pearson Co.,
 
 284 Pa. 348, 354, 131 A. 247, made it clear that even though a physician attributed a stroke to claimant’s exertion in the performance of his work and expressed the opinion that but for thé work it would not have happened at that time, nevertheless that alone would not constitute an accident. In any event the expert opinion of the physician was not material until there was some evidence of an accident. Over-exertion must be given a more limited meaning and must, in any event, be confined to such cases as furnish the basis for a conclusion that there has been 'an unforeseen or fortuitous event.’ ”
 

 
 *146
 
 In the absence of any evidence of an accidental injury, it is unnecessary to discuss the opinion of claimant’s medical witness, Dr. Margolies. This witness testified that the autopsy report indicated decedent’s heart was in such an advanced stage of deterioration that he might as easily have been stricken while walking down the street, sitting in a chair, or lying in bed.
 

 Claimant failed to meet the burden required under the cases cited, and we believe the case was properly' decided by the court below.
 

 Judgment affirmed.