MARY O. MEDEROS *vs.* DANIEL MCLEOD.

JUNE 27, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This petition for workmen's compensation for personal injury resulting in the death of an injured em-

ployee is here on the respondent's appeal from a decree of the superior court granting the petition.

The respondent contends that the evidence does not show that the deceased sustained a personal injury by accident and hence such personal injury is not compensable under the workmen's compensation act. (G. L. 1938, c. 300) He contends also that even if the evidence·is held to show that the personal injury was received by "accident" within the meaning of the act, it does not show that such "accident" was the cause of the injury which resulted in, the injured employee's death. These contentions raise questions of law that are the only issues in the cause, the facts being undisputed.

Anthony Mederos, the deceased employee and the husband of the petitioner, was employed as a serviceman at the garage of the respondent, who, was doing business as the Brook Street Garage in the city of Providence. He had been so employed continuously for a period of twelve years until his death, which occurred on Saturday, December 3, 1938, shortly after he had collapsed in the garage while changing the tires on a La Salle automobile. This car had been brought into the garage on that morning to have all of its tires changed and the job was turned over to Mederos at about 10:30 o'clock, a.m. The tires had been on the wheels for about two and one-half years without ever having been taken off, had been constantly inflated at a pressure of thirty-five to thirty-eight pounds and had traveled about twenty-two thousand or twenty-four thousand miles.

The evidence was undisputed that when tires at such pressures are allowed to remain on automobile wheels under such use and for such a long period, they "stick" or "freeze" or "are cemented" to the rims and are unusually difficult to remove. In such circumstances, the serviceman is not confronted with the ordinary tire-changing job but with one

that is exceedingly troublesome. Such jobs were not frequent at the respondent's garage but occasionally one or two came along in the course of business. Mederos had handled some of them and had experienced unusual difficulty in prying the tires from the rims. On one occasion during the summer next preceding the time when he was injured it had taken him one-half day to finish a tire-changing job of this kind.

A fellow employee who worked at the garage in the same capacity as Mederos stood by most of the time while Mederos was doing the instant work and he testified that "it was a real tough job. It was the hardest tire changing job I have seen."

In doing this particular job it was necessary for Mederos not only to use the tire irons and tap the tire with a hammer, which was sufficient on the usual tire-changing job, but also to jump vigorously up and down on each tire and pound it with his heel to break it or pry it loose from the rim. While prying the tire forcibly and continuously with the tire irons, he had, at the same time, to lift the tire up from the floor so as to keep it from falling. Each tire gave him the same trouble and he was compelled to keep up this strenuous exertion continuously for about an hour and a half, at the end of which time he complained of a pain in his chest. The pain was so severe he went to the men's rest room in the garage but almost immediately after going there he was heard to cry out "I am going. . . . Get me a doctor, get me a doctor quick."

One witness testified that just before Mederos went to the men's room he sat on the running board of an automobile, with the perspiration "pouring right out of him", complained of not feeling well and had his hand on his chest. Being unable to walk alone, he was assisted from the men's room to his home where a doctor was called immediately.

After examining Mederos the doctor said that he had had a nervous attack and advised that he rest in bed until the following Monday, when he would be able to return to work. However, shortly after the doctor left the house Mederos, still in great pain, expired.

The doctor testified in the superior court that Mederos was suffering from "Chronic myocarditis and collapse brought on by over-exertion" and that: "The cause of death was chronic myocarditis aggravated by over-exertion." He also testified, in answer to a question whether Mederos would have died if he had not over-exerted himself in the manner in which he did: "No, he wouldn't have." And in response to another question as to Mederos's chances of continued life with this heart ailment, he further testified: "It is hard to say how long he would have gone on until he reached a period where he would over-exert himself or something might happen, but without the exertion on the particular date he would not have died at that time."

The trial justice inquired of the doctor if the professional opinion which he had previously given of Mederos's injury meant in nontechnical language that the strain on the heart muscle caused by the over-exertion resulted in a collapse of that muscle so that it would no longer function. His answer was: "That's correct, Your Honor."

This opinion was based on what he had been told Mederos was doing just before his collapse at the garage and on what had been his previous condition of health. Mederos had not previously had occasion to seek medical advice or treatment. Apparently he did not know that he had myocarditis or any other ailment of the heart. He had been a steady and consistent worker for the respondent over a period of twelve years and rarely lost time from his work. He considered himself in excellent health. About six months before his death, a doctor had examined him. The respond-

ent's bookkeeper testified that Mederos told her at that time that the doctor had said he was in "perfect shape." He had never complained of a pain in his chest before, either at the garage to his fellow employees or at home. His wife testified that he was in good health and that he had eaten a substantial breakfast before going to work on the morning of the accident. The doctor, who attended him after his injury, testified that anyone could have myocarditis and not know of it until, some unusual strain or over-exertion brought it to his attention.

The trial justice found from this evidence that, on the morning of December 3, 1938, Mederos had been forced to exert and did exert unusual and excessive muscular efforts in the course of his employment in endeavoring to remove the tires from the rims; that as a direct consequence of such unusual and excessive muscular efforts, he strained the structure of his heart, which he did not intend, when so exerting himself, and that as a direct result of such strain, he died a few hours thereafter in the afternoon of the same day, December 3, 1938. The trial justice also found from the medical evidence that Mederos, before that date, had chronic myocarditis but that it did not prevent him from doing his usual work at the garage and that such ailment would not have caused his death on that date had it not been aggravated just before his death by the strain put upon his heart by his unusual and excessive efforts in the course of his employment in endeavoring to remove the tires from the rims.

The respondent argues that these findings are erroneous and not warranted by the evidence. He contends that, since it was a part of Mederos's regular work to change tires, including even those as difficult to change as the tires on which he was working when he collapsed, and since he had done such work before and undertook to do the instant work in the regular and usual way in which such difficult tire-chang-

ing jobs were done, it could not properly be said that his over-exertion and resulting collapse constituted a personal injury *by accident* within the meaning of the workmen's compensation act.

The respondent states the proposition that: "An injury which results from the performance of a task which is part of an employee's regular duties is not a personal injury received by accident where the task is performed precisely as the employee intended to perform it and in the best possible method." The proposition as stated is not clear, but we understand it to mean that if an employee is doing his regular work in the usual way and suffers a personal injury because of the injurious effect of his exertions on his physical system, without any visible, untoward mishap, such injury is not compensable under the act, because it was not sustained by accident in the sense that the word *accident* is used in the act.

This court, following the course pursued by the English courts that first considered this question in construing the English Workmen's Compensation Act after which our act, it has been said, was closely patterned—*Mingo* v. *Rhode Island Co.*, 41 R. I. 423, 426—has refrained from attempting any precise legal definition of the word "accident" as it is used in our act. In *Walsh* v. *River Spinning Co.*, 41 R. I. 490, 496, after reviewing a series of English cases in which the meaning of this word had been considered at great length, it was concluded that: "From all this discussion, however, covering many pages in the reports, the conclusion of Lord Macnaghten, which in a later case he referred to not as a definition but merely a decision that the word was to be taken in its ordinary and popular sense, has been accepted as, on the whole, the best interpretation of the expression."

In the *Walsh* case this court adopted such interpretation and applied it to the facts before it and held that a fireman

who, on a warm day in an excessively hot boiler room, collapsed from heat exhaustion and died in the hospital the next day, sustained a personal injury by accident. The sudden inability of the fireman's physical system to longer resist the debilitating effects of the unusual and excessive heat of the boiler room was, the court said, "an unlooked for mishap not designed and undoubtedly unexpected." And the court went on to say in support of the view which it had taken: "We think that in thus viewing the occurrence we have not confounded the injury with the accident. The untoward event which in this case produced the disability from which John Walsh died was the aggregate of the circumstances culminating in the breaking down of his physical stamina." And then it went on to approve Lord Lindley's statement in *Fenton* v. *Thorley,* (1903) App. Cas. 443, that the word "accident" is often "used to denote an unintended and unexpected loss or hurt apart from its cause; and if the cause is not known, the loss or hurt itself would certainly be called an accident. The word 'accident' is also often used to denote both the cause and the effect, no attempt being made to discriminate between them."

Later, in *Gibbons* v. *United Electric Rys. Co.,* 48 R. I. 353, 355, the court found that an employee who, while shoveling snow from car tracks continuously for twenty-four hours, suffered frostbite, necessitating the amputation of portions of two toes, had sustained a personal injury by accident. The decision was rested squarely on the broad construction given to the word "accident" in the *Walsh* case, *supra.,* the court saying: "In that case we approved an interpretation of the word 'accident', used in the act, as having the popular and ordinary sense of an unlooked-for mishap, an untoward event, which is not designed or expected, and being unexpected has in it an element of suddenness."

These two cases have undoubtedly established a broad rule of construction as to what constitutes an "accident"

under our act. Applying that rule to the evidence in the instant cause, we are of the opinion that Mederos clearly sustained an injury by accident. On comparison it appears to us that the instant petitioner's claim is even stronger than either the petitioner's claim in the *Walsh* case or in the *Gibbons* case. Mederos, according to the doctor's testimony, strained a muscle of his heart by reason of his *over-exertion* on the *unusual* tire-changing job, and that strain brought on a collapse of the heart from which he died.

The trial justice found this to be a fact and, since such finding is based upon evidence, it is conclusive upon us. Here was a definite, unlooked-for and sudden mishap to Mederos, while working on an unusually difficult and straining job. In the popular sense of the word "accident" there can be no question that it was an accident of the type and character which the judges in *Fenton* v. *Thorley, supra,* had in mind in expounding their comprehension of the term in the English workmen's compensation act, as distinguished from a narrower meaning which had been given to the word in cases construing accident insurance policies.

The respondent has cited a number of cases outside of this state, which he claims supports his contention that the injury to Mederos should not be deemed an accident. We have examined these cases and find that some of them seem to lend him some support, but others, particularly those from Pennsylvania, clearly do not. Such cases from that state as seem to support the respondent are distinguishable on their facts from this case, and in most instances were distinguished by the Pennsylvania court, itself, from other cases in that state, similar to the instant cause, where the facts in evidence were held to show an injury to the employee by accident. See *Camilli* v. *Pennsylvania R. Co.,* 135 Pa. Super. 510, 7 A. 2d 129, 131, wherein the court observed: "Where the injury is wholly within the body, proof of acci-

dental cause often must rest upon circumstances attending it."

For further proof see *Vitanza* v. *Iron City Produce Co.*, 131 Pa. Super. 441, 200 A. 311; also *Strode* v. *Donahoe's Fifth Ave. Store*, 127 Pa. Super. 231, 193 A. 86, wherein the court pointed out by way of quotation from another case: " 'It must not be thought that the employee had never before done what he was doing when his overexertion resulted in death; but it was not his usual, regular, everyday work.' The use of the claimant's entire strength was clearly an over-exertion, and thus an accident within the terms of the compensation act."

In *Witt* v. *Witt's Food Market*, 122 Pa. Super. 557, 186 A. 275, the Pennsylvania court said: "It is not the lifting that constitutes the accident, but the strain or sprain resulting therefrom and causing 'violence to the physical structure of the body.' " And in *Falls* v. *Tennessee Furniture Co.*, 122 Pa. Super. 550, 186 A. 272, it was said: "An injury by accident may occur in the course of the normal duties of an employee and without overexertion, when a strain, sprain or twist causes a break or sudden change in the physical structure or tissues of the body; and the fact that the employee had an inherent defect or a chronic condition, which rendered him more susceptible to such injury than an ordinary person would have been, will not defeat the right to compensation."

When the Pennsylvania cases are carefully examined, it will be found, we think, that the same liberal rule of construction is applied there to the word "accident", as is applied here and in the great majority of the jurisdictions in this country. That the instant cause would fall into the category of those cases in which the Pennsylvania court has held that personal injury was received by accident and was therefore compensable is evident from the decision in *Kummerer* v. *Snyder*, 117 Pa. Super. 28, 177 A. 232. There the

injured employee died from acute dilation of the heart caused by and immediately following over-exertion in loading and unloading a truck and in pushing heavy rocks under the wheels of the truck. The court said: "The work in which the decedent was engaged immediately preceding his death, according to the testimony, required unusual physical strain." And it therefore sustained the lower tribunal's finding: "That the decedent met with an accidental death while in the course of his employment with the defendant . . . ," on the authority of *Tracey* v. *Philadelphia, Reading C. & I. Co.*, 270 Pa. 65, 112 A. 740, where it was held that death resulting from strain upon the heart caused by over-lifting was an accident.

In the recent case of *Chirico* v. *Kappler*, 61 R. I. 128, we held that a sudden sprain or strain to an employee's back while he was lifting stones and loading them on a truck in the course of his usual employment was a personal injury by accident within the meaning of the word "accident" as liberally construed in *Walsh* v. *River Spinning Co., supra.* Our decision was based upon and confined to the facts as found by the trial justice which we said were conclusive. Those findings were "that the petitioner received a strain or sprain in his back while loading a truck with stones; that because of such injury, he was unable to work . . . and that his doctor then advised him to get light work." In the instant cause the trial justice followed this case and held that the personal injury which Mederos had sustained in the course of his employment was received by accident as a result of excessive and unusual efforts causing a strain upon the structure of his heart. In this we are of the opinion that the trial justice did not err.

The next contention of the respondent is that there is a lack of proof of causal connection between the accident and the injury. We think this contention is clearly without merit. From the evidence above quoted earlier in this opin-

ion, it is obvious that the trial justice was warranted in finding as he did, that as a result of over-exertion by Mederos in the course of his employment he strained the muscle of his heart causing it to collapse. There being evidence to support it, this finding is conclusive.

The respondent has called our attention to *La Pointe* v. *Pendleton*, 61 R. I. 121, in support of his contention of lack of causal connection. Superficially considered, that case may seem to be like the instant one by reason of the sudden death of the employee while exerting himself on the job he was doing, causing a failure of the heart; but when the opinion is read carefully, it is clear that there was no proper evidence of causal connection, because the medical witness declined to give his opinion of the cause of death on the facts in evidence before the court, although he had previously given a professional opinion outside of court on facts that were "to a great degree different." The refusal of this witness to testify as to the cause of the employee's death left the record without any evidence of causal connection, and we so found. That is clearly not the condition of the record in the instant cause.

There is no error. The respondent's appeal is accordingly denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Lisker, Sullivan & Lisker, Eugene J. Sullivan, Jr., Hyman Lisker*, for petitioner.

*Haslam, Arnold & Sumpter, Harry A. Tuell*, for respondent.