## Curran v. James Regulator Company, Appellant.

Argued December 14, 1944.  Before KELLER, P. J., BALDRIGE, RHODES, HIRT and RENO, JJ.  (JAMES, J., absent).

*James W. Scanlon,* with him *Charles E. Berger,* for appellant.

*Roy P. Hicks,* with him *Joseph G. Seesholtz,* for appellee.

OPINION BY RHODES, J., March 5, 1945:

On October 11, 1938, claimant's husband was employed by defendant as a laborer, and lived across the street from defendant's plant.  He was a man forty-six years of age, and in apparent good health when he left for work at 7 A. M. on that morning.  His personal physician testified that he had always found him in good health.  As was deceased's custom, he returned to his home about 8 A. M. to have a cup of coffee, as he ate no breakfast before reporting to work.  At 9:30 A. M. he returned home again with a telephone message for his wife, and immediately went back to work.  At 10:10 A. M. his wife heard him coming up the steps of their home in a manner that indicated to her that he was in distress, and she asked him what had happened.  He answered, "I lifted a box and hurt my chest, help me." He then said, "Take me to the bathroom," which she did, and immediately called a doctor.  Deceased was

perspiring profusely, and claimant wrapped towels around him and made a mustard plaster as he had directed her to do. His face was wrinkled with pain, and he was put to bed. When the doctor (Dr. R. M. Biddle) arrived, he saw immediately that deceased was critically ill, and upon asking him what happened was told, "I was lifting a box over there and it was too much for me." The doctor administered a hypodermic, and deceased died at approximately ten minutes after eleven. While enroute to his home after the alleged accident, deceased was asked by a neighbor to repair her washing machine. He refused and said to her, "I just slipped with a box and hurt my chest." Defendant's manager arrived at deceased's home before he died, and received a similar statement of the occurrence.[1] The sixth finding of fact of the referee, affirmed by the board, is as follow:

"6. Decedent was employed on said date in the lifting of a box approximately two feet in length, eighteen inches wide, six inches deep, weighing one hundred and forty-eight pounds, which weight was not the usual and ordinary weight of the boxes which decedent was called upon to move, the said usual and ordinary weight being between fifty pounds and not exceeding one hundred and twenty pounds. The box in question was unusually heavy because of extra amounts put therein after its original receipt. The box itself was also not the usual type or kind of box. When handling a box of unusual weight it was customary for more than one employee to do the work."

There were four other employees in defendant's plant that morning, and they testified that they did not carry or lift the box, and that it was not the usual kind carried by one employee. There were no eyewitnesses to the accident, but the box was seen on the floor of the

---

[1] The admissibility of the declarations of deceased as part of the res gestae has not been questioned on this appeal.

plant about 9 A. M. and at 11 A. M it was seen on the carrier.

The referee and the board found that deceased, on October 11, 1938, suffered an accident in the course of his employment with defendant, and that as a result thereof he died on the same day of a coronary occlusion. This is the finding which gives rise to the present controversy. We are unable to reconcile defendant's argument with the facts, and we do not accept its assertion that there has not been presented the quality and quantity of evidence which constituted the substantial competent evidence required to sustain an award. Defendant relies upon *Toohey v. Carnegie Coal Corp.*, 150 Pa. Superior Ct. 297, 28 A. 2d 362, and *Powell v. Hills Garage et al.*, 150 Pa. Superior Ct. 17, 27 A. 2d 773. In the *Toohey* case, supra, and in *Apker v. Crown Can Co. et al.*, 150 Pa. Superior Ct. 302, 28 A. 2d 551, we held that, even where there is no evidence of a preexisting condition, the uncorroborated post hac testimony of an employee that while performing his usual work in the usual manner he "felt a sharp pain" or "twisted himself" will not support a finding of an accident even though accompanied by the opinion of a physician based upon such assumed history. In the *Toohey* case claimant's wholly uncorroborated testimony was that he felt a pain while at work on October 18, 1938, although he continued to work without interruption until November 23, 1938, and first saw a physician on December 1, 1938. In the *Powell* case we held that there was substantial competent evidence to support the board's finding that the death of deceased was not due to, or the result of, the work he was doing at the time of the heart attack on November 25, 1938, and that the testimony offered by the claimant was for the consideration of the board upon which the ultimate responsibility rested for the facts found.

In the present case the questioned finding was not based solely on the statement of deceased that he had a

severe pain in his chest from lifting the box, and that he "just slipped with the box and hurt [his] chest." There were other circumstances which warranted the finding. See *Buck v. Arndt et al.*, 153 Pa. Superior Ct. 632, 637, 34 A. 2d 823. Deceased's prior condition of health was good. There was lay and medical testimony to this effect. The particular box which deceased lifted was unusual in type and weight for one man to handle in this plant. There was immediate distress and illness manifested at the time. See *Yankunos v. Hinds Catering Co. et al.*, 130 Pa. Superior Ct. 187, 191, 196 A. 520; *Palermo v. North East Preserving Works, Inc., et al.*, 141 Pa. Superior Ct. 211, 216, 15 A. 2d 44. The causal connection between the unusual exertion and slipping and the death of deceased was established by the medical testimony. Dr. J. A. Sweeney, whose testimony was received without objection, testified: "In my opinion the lifting of the box precipitated that which caused his death namely, the coronary occlusion." He also said that an autopsy was not absolutely necessary to ascertain the real cause of death.

The judgment is affirmed, subject to the provision that no execution thereon shall issue for any sum or amount in excess of the rate fixed by the schedule in force prior to the effective date of the Act of June 4, 1937, P. L. 1552 (since under the decision in *Rich Hill Coal Co. et al. v. Bashore*, 334 Pa. 449, 7 A. 2d 302, the compensation payable in death cases under sections 306, 307, and 309 was not passed upon), without the permission or authority of this court, and until a reasonable time has elapsed to secure a final determination of this issue now pending before the Supreme Court as to the reasonableness and constitutionality of the rate of compensation fixed in said Act of 1937 as respects death benefits; and if found to be unconstitutional as respects the rate of compensation herein involved, the judgment to be opened as to all in excess of the compensation payable under the prior statute. If the claimant refuses to ac-

cept such compensation as directed above, interest shall cease on the amount so tendered.