## Bird *v*. Brown, Appellant.

Argued March 5, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, and ROSS, JJ.

*Walter W. Harris,* with him *O'Malley, Hill, Harris & Harris,* for appellant.

*Russell J. O'Malley,* with him *Nogi, O'Malley & Harris* and *Gerard W. O'Malley,* for appellee.

OPINION BY BALDRIGE, P. J., April 12, 1945:

The principal question before us is whether the claimant's hernia was the result of an accidental injury occurring September 9, 1938. At that time the amendment of June 4, 1937, P. L. 1552, to the Workmen's Compensation Act of 1915 was in effect so that no statutory requirements relating solely to hernia cases were then in force: *Eckman v. U. S. Lock and Hardware Company (et al.),* 146 Pa. Superior Ct. 513, 23 A. 2d 232.

This case was here before in 148 Pa. Superior Ct. 534, 25 A. 2d 857. The court below had reversed an award on the ground that there was no proof of an accident causing claimant's hernia. We directed the record to be returned to the board in order "that the facts may be more fully developed, and that there be more specific findings of fact by the compensation authorities" on the question of an accidental injury. Additional testimony was taken, showing that claimant never had any protrusion, pain or other trouble in the hernial area antedating the alleged accident, and the board, as well as the referee, so found.

The claimant had been employed for 15 years as a truck driver and freight handler. His work consisted of hauling crates, boxes of canned goods, etc., from the warehouse of the Atlantic and Pacific Tea Company to its retail stores in the vicinity of Scranton. On the

day in question he drove to the Dunmore store of his employer, arriving there a few minutes after 12:00 noon. The store closed for lunch between 1:00 and 2:00 so he had to complete unloading some 300 boxes, each weighing from 5 to 100 pounds, before 1 o'clock. Usually to unload that amount of merchandise required 1½ to 1¾ hours. Claimant's helper had been taken off some six months previously and since then he had to do his unloading work alone and had never before been required to unload a similar cargo in such a limited time. After he had unloaded one-half of the merchandise, he picked up from the floor of his truck two cases of canned goods having a total weight of between 140 and 160 pounds. Carrying in his hands these two boxes, pressed against his right knee, he walked about 6 feet to a point 2 feet from the end of the truck. Standing sideways, his feet pivoting, he partially turned his body and while swinging or heaving this load up on top of a box, which was 5 feet above the floor of the truck, he suddenly was seized with a sharp, cutting pain in the bottom of his stomach. He became "deathly sick to the stomach ...... doubled me right up like a jack-knife." He was unable to unload any more freight and went into the store to lie down until a store attendant, who corroborated the claimant's account of his illness, finished unloading the truck.

Claimant returned the truck to the warehouse garage, then went home, undressed, and discovered a severe hernial swelling, which was very red. He went to bed and remained there until the 12th when, with assistance, he got up and went to see Dr. Flynn, who found he was suffering from a "fairly good-sized left scrotal hernia." The doctor testified at the last hearing that the strain or motion that he went through in unloading his truck caused a sudden aggravation of what was "probably a preexisting weakness." Dr. MacLean examined the claimant on April 17, 1939, and expressed

the opinion that he had a hernia prior to the date of the alleged accident. Neither of these doctors, however, had ever examined the claimant before September 9, 1938. Whether or not he had a hernia prior to that date was for the determination of the fact finding body.

The referee's 11th finding was as follows: "We find as a fact that the said scrotal hernia was caused by the strain exerted by the Claimant in endeavoring to unload the truck at a faster rate of speed than usual." The board affirmed the referee's findings and conclusions. The award entered was upheld by the court of common pleas. This appeal followed. We think that there was sufficient competent evidence to establish a compensable accident.

It will be observed that we have a case where the claimant, prior to the alleged accident, was a strong, normally healthy man, without any symptoms of a hernia. While working under unusual conditions, he turned his body when lifting a heavy load and suffered a strain, which resulted in a hernia. The effect thereof was not only immediately experienced by the claimant, but was known to others. From the day of his injury to the present time he has been totally incapacitated for work. Concededly, an accident cannot be inferred merely from an injury (*Adamchick v. Wyoming Valley Collieries Company*, 332 Pa. 401, 3 A. 2d 377), nor may disability resulting from hard labor, if of the same kind and performed in the same manner as previously, constitute an accident: *Crispin v. Leedom and Worrall Company (et al.)*, 341 Pa. 325, 19 A. 2d 400. The facts before us do not bring this claim within the scope of these well known authorities.

We have had a large number of these strain cases, some of which presented difficult problems to solve. We think this case falls squarely within the class of which we will give a few examples. In *Camilli v. Penna. R. R. Co.*, 135 Pa. Superior Ct. 510, 7 A. 2d 129, the claimant suffered a hernia while lifting a cake of

ice weighing between 25 and 30 pounds into a tank. We there held that the proof supported the conclusion that a hernia resulted from violence to the physical structure of the body resulting from unusual strain; that where the injury is wholly within the body, proof of an accidental injury often must rest upon circumstances attending it. (513) "Particularly is this true of a hernia, an injury which often results from lifting a weight not in itself excessive, but done in such a manner as to produce undue strain. The posture of the individual while lifting, and not the weight, may determine the result. An injury so caused may be regarded as an unexpected or fortuitous event or happening."

In *Gavula v. Sims Co.*, 155 Pa. Superior Ct. 206, 38 A. 2d 482, the claimant suffered from a rupture of an intervertebral disc, caused by his welding in a prolonged strained, stooping position. We there pointed out, speaking through the late President Judge KELLER, that this type of case is not controlled by *Adamchick* and kindred authorities, but comes under the well established rule that compensable injury may occur in the course of the normal duties of an employe and without over-exertion when a strain, sprain, or twist causes a break or sudden change in the physical structure or tissues of the body or bony cartilage, or a rupture of the softer tissues, citing numerous cases. See, also, *Max Utzman v. Pennsylvania Rubber Company and Aetna Life Insurance Company*, 96 Pa. Superior Ct. 463.

The appellant takes the further position that the claimant cannot recover as he failed to minimize his injury by undergoing an operation. Section 306 (e) as amended by the Act of 1937, P. L. 1552, 77 PS §531 provides: "If the employe shall refuse such services, hospital treatment, appliances, medicines, and supplies, tendered to him by his employer, he shall forfeit all rights to compensation for any injury or any increase in his incapacity shown to have resulted from such re-

fusal." Appellant did not bring himself within that statute as he consistently denied any liability whatever, and there is no evidence that any medical treatment or hospital care was tendered to, or refused, by the claimant. That statute has no application: *O'Toole v. Hughes-Foulkrod Co.*, 113 Pa. Superior Ct. 292, 173 A. 703.

The last position advanced by the appellant is that the rate of compensation established by section 306(a) as amended by the Act of 1937, supra, under which an award was made, does not apply since it has been declared unconstitutional in *Rich Hill Coal Co., et al. v. Chesnut, Secretary of Labor* (No. 1414, Equity Docket, C. C. P., Dauphin). It is true that this question was not raised by the appellant in the court below, but we will follow our practice adopted in the case of *Curran v. The James Regulator Company*, 157 Pa. Superior Ct. 44, 41 A. 2d 443, where, as here, the appellant raised for the first time the question of whether the rates under the act of 1937, supra, are applicable. We there held, in affirming the judgment, that no execution should issue thereon for any sum or amount in excess of the rate fixed by the schedule enforced prior to the effective date of the act of 1937, supra, without the permission or authority of this court, and until a reasonable time has elapsed to secure a final determination of the issue now pending before the Supreme Court as to the reasonableness and constitutionality of the rate of compensation fixed by the 1937 amendment. If the rate fixed is found to be unconstitutional in respect to the rates here involved, the judgment shall be opened as to all in excess of the compensation payable under the prior statute. If the claimant refuses to accept such compensation as above directed, interest shall cease on such amount tendered.

Judgment is affirmed subject to above provisions.