## Macaluso *v.* United Engineers & Constructors et al, Appellants.

266

Argued April 11, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*David M. Kaufman,* for appellants.

*Sam R. Keller,* for appellee.

OPINION BY BALDRIGE, P. J., July 19, 1945:

In this workmen's compensation case the board sustained the referee's award granting compensation to the claimant for total disability. The learned court below affirmed the board. This appeal by the employer followed.

The appellants claim that there was not sufficient, legally competent evidence to warrant the finding (1) that the claimant had sustained an accident in the course of his employment, (2) that he was totally disabled as a result thereof, and (3) if a disability did result from the accident, that it continued to the time of the hearings before the referee.

The claimant, according to his testimony, is a structural iron worker and on the morning of May 7, 1943, about 10 o'clock he was engaged, with other employes, in moving with a crane some large timbers 12 feet long, 12 inches wide and 12 inches high, each weighing about 300 pounds. After a couple of these timbers were moved the tongs of the crane began to slip and the claimant was then directed to move them by hand. Their weight was too great to carry, but by picking up one end and moving it over and then repeating that operation at the other end, he moved 5 timbers. His testimony continues: "Q. What happened on the sixth timber? A. Either the sixth or seventh; *I picked it up to throw like the rest of them, and the weight was too much and threw me over,* and I fell on the timber and got a sharp pain in my back and everything went black for a minute, and then I got up. Q. When did you first feel the pain? A. All at once. It threw me and I fell on top of the timber and I got a pain at the same time, all at once. Q. I want to know what you mean by 'threw you'? A. The weight of it threw me. My muscles were getting weaker every timber I lifted, and the last one I couldn't lift. Q. Did you feel the pain while lifting it? A. Yes. *The weight dragged me down* and everything went black, and I fell down on top of them." (Italics supplied.)

The appellants argue that while there is this testimony of a fall, it does not appear that it was the cause of the injury and that if the fall is eliminated there is no evidence of a compensable accident, as the testimony shows the injury occurred in the performance of his regular duties, citing *Adamchick v. Wyoming Valley Collieries Co.,* 332 Pa. 401, 3 A. 2d 377, and *Crispin v. Leedom and Worrall Co. et al.,* 341 Pa. 325, 19 A. 2d 400.

That contention disregards the claimant's testimony especially that part we have italicized. Whether or not the injury caused the fall, rather than the fall the

injury, was a factual matter for the determination of the compensation authorities. Appellants further assert that the alleged accident was due to a preexisting injury to the right sacroiliac joint. The claimant testified that he did have some "very slight" trouble with his back a couple years before this accident, due to his muscles becoming weak from his lying in a hospital for a month, but he asserted that he never experienced any difficulty of that character when he was "on a job." If his back had been previously weakened, but had been affected by an injury in a way not attributable to the natural progress or development of that condition, there may still be a compensable accident: *Fye v. Baltimore & Ohio Railroad Co.*, 133 Pa. Superior Ct. 550, 557, 3 A. 2d 275.

We think there was sufficient, legally competent evidence to conclude there was an accident due to a sudden change in the physical structure of the body as a result of a strain, sprain, or twist caused by the moving of this heavy timber. We said in *Gavula v. Sims Co.*, 155 Pa. Superior Ct. 206, 212, 38 A. 2d 482: "...... a compensable injury may occur in the course of the normal duties of an employee and without overexertion, when a strain, sprain, or twist causes a *break* or sudden change in the physical structure or tissues of the body— that is, a *fracture* of the bone or bony cartilage, or a *rupture* of the softer tissues; (citing cases)." See, also, *Buck v. Arndt et al.*, 153 Pa. Superior Ct. 632, 34 A. 2d 823, and *Bird v. Brown*, 157 Pa. Superior Ct. 49, 41 A. 2d 881.

That brings us to a consideration of appellants' claim that claimant was not disabled as the result of the accident. Immediately after the accident, the foreman referred claimant to the nurse in the plant. She applied some remedies and told him to see the company physician, Dr. Caven. He visited the doctor that afternoon, received treatment and continued to be under his care for about two weeks after the injury. He went to

work the next day, Saturday, May 8, but following the doctor's instructions he did easy duties. He did not work Sunday, although the plant operated, but he reported Monday morning. He soon found he was unable to perform his regular duties, returned home and remained there for a week. On May 17, he tried to work, but his disability persisted and at the end of two hours he was discharged.

Dr. Best, an expert in orthopedic surgery, testified that the claimant consulted him first on June 8, 1943. He complained of pain in the lower back, which he said began on May 7, when he was lifting a heavy timber and since that time he has not improved. The doctor recommended he wear a high lumbo-sacral belt, which he obtained and was still wearing at the time of the hearings. This doctor diagnosed his trouble as a "sprain of his right sacroiliac joint plus a secondary infectious process" and expressed the opinion from the history of the onset of his trouble that the heavy lifting was the initiating cause. That meets the legal requirements: *Elonis v. Lytle Coal Company,* 134 Pa. Superior Ct. 264, 3 A. 2d 995; *Williams v. Jones & Laughlin Steel Corp.,* 155 Pa. Superior Ct. 435, 38 A. 2d 343.

Dr. Caven stated that the claimant had given him a history of the dislocation of the right sacroiliac joint in 1941 or 1942. There is no evidence, however, in the record that this claimant's back had given him any trouble for some time prior to the accident. If we disregard the experts' opinions, the claimant's own testimony, that he was in good physical shape prior to May 7, and that his disability resulted directly and immediately from the strain of heavy lifting and that he was unable to do any substantial work continuously thereafter, warranted the fact finding bodies in awarding compensation: *Mosley v. Jones & Laughlin Steel Corp.,* 155 Pa. Superior Ct. 598, 604, 39 A. 2d 161.

Dr. Caven testified that he sent claimant to a specialist, Dr. Yount, who was selected by the insurance

carrier, and although it was stated by the attorney for the appellants that Dr. Yount would be produced to testify, he was never called. The fact finding bodies, therefore, could conclude that Dr. Yount's testimony would have been unfavorable to the employer: *Mahoney v. Francis Mulholland Roofing Co. et al.*, 135 Pa. Superior Ct. 498, 5 A. 2d 812; *Mosley v. Jones & Laughlin Steel Corp.*, supra. p. 605.

While the burden was on the claimant to establish that he had sustained a compensable injury, we are of the opinion that there was sufficient, legally competent evidence to support the finding of the compensation authorities that he was totally disabled as a result of the accident.

The appellants' final point is that the total disability did not continue until the time of the hearings on December 10 and 21, 1943. Claimant testified he had not been able to work since May 7, 1943. Dr. Best expressed the opinion that claimant was unable to work when he last examined him on October 19, 1943. It cannot be said that there was insufficient testimony for the compensation authorities to hold that the total disability existed at the time of the hearing.

Judgment of the court below is affirmed.