## Mager, Appellant, *v.* State Workmen's Insurance Fund et al.

Argued April 13, 1937.

Before KELLER, P. J., CUNNING-

HAM, BALDRIGE, STADTFELD, PARKER, JAMES and
RHODES, JJ.

*Murray J. Jordan,* with him *Fred J. Jordan* and *R. Rhody Brenlove,* for appellant.

*John T. J. Brennan,* with him *Charles J. Margiotti,* Attorney General, and *S. H. Torchia,* for appellee.

OPINION BY STADTFELD, J., July 15, 1937:

This is an appeal by claimant from a judgment of the Court of Common Pleas of Allegheny County entered in favor of the defendant in a workmen's compensation case.

The referee made an award in favor of claimant. From this award, defendant appealed to the Workmen's Compensation Board which reversed the referee and set aside the latter's third and fourth findings of fact on which the award was based and substituted the following supplemental findings of fact: "1. On December 21, 1931, the decedent was in a serious automobile accident, sustaining fractured ribs and a tear of the rectum. This accident had no connection with his employment for the Buckeye Coal Company. For six months he was under the care of Dr. R. D. Yoder, suffering total disability as the result of these injuries.

"2. The decedent returned to work for the Buckeye Coal Company on June 6, 1932. Prior to that time he had been employed laying track. After June 6, 1932, he was employed as a loader of coal. For several years he had been suffering from a progressive disease of the heart as the result of the growth of fibrous tissue, culminating in what is known as heart block.

"3. During the night shift on June 30, 1932, the decedent and George Mondiechek loaded one car of coal. They then began to load a car of slate, using a shovel and occasionally picking up the slate with their hands. The larger pieces were broken up with a hammer and sledge. After loading a quarter of a wagon of this slate the decedent fell to the ground as a result of an attack of heart block.

"4. As the result of this fall the decedent sustained a gash on the back of his head about one inch in length. He got to his knees and Mondiechek thought his shoe loose, but the decedent fell again and Mondiechek helped him to his feet. The decedent then walked to one side and sat down while Mondiechek finished loading the car of slate. The foreman then had a man take the decedent out of the mine.

"5. On July 1, 1932, the decedent called at the office of Dr. R. D. Yoder. Dr. Yoder did the medical work for the employees of the Buckeye Coal Company other than maternity cases, major operations, tonsilectomy, compound fracture incurred out of line of employment, and venereal diseases, exclusive of services required under the Workmen's Compensation Act. This included work done for the families of the employees, and Dr. Yoder received the sum of $1.50 from each employe who elected to make an assignment for this purpose.

"6. Dr. Yoder closed the wound on the back of the head with two stitches, and treated him until July 16, 1932. The wound on the back of the head healed up

in approximately seven or eight days. Disability continued, however, as the result of the disease of the heart, and the decedent did not thereafter return to work. The work done by the decedent on June 30, 1932, and the exertion incident thereto, precipitated the heart attack and caused him to fall, *but neither the fall nor the wound on the head had any appreciable effect in aggravating or accelerating this disease.* (Italics supplied).

"7. On August 8, 1932, the decedent called at the office of Dr. J. W. McMeans. According to this physician, 'The condition in which I found his heart led me to believe he wouldn't live for long.' On August 11, 1932, the decedent suffered an acute attack and was removed to the Mercy Hospital. He improved slightly and ate his supper on August 13, 1932, but when the nurse went in for his tray he was dead. There was no autopsy. The cause of death was complete heart block resulting from a progressive disease of the heart. The exertion of loading coal and slate on June 30, 1932, aggravated this disease, or at least precipitated the acute symptoms of the disease and to some extent hastened his death."

The Board set aside the conclusions of law and award of the referee and dismissed the claimant's petition. On appeal to the Court of Common Pleas, the exceptions ex parte claimant were overruled and the appeal dismissed. This appeal followed.

The Workmen's Compensation Board is the final fact-finding body in compensation cases. Where the findings of fact made by the board are based on competent evidence, they are conclusive, and our courts have no power to weigh the evidence and revise those findings or reverse the final action of the board: *Vorbnoff v. Mesta Machine Co.* et al, 286 Pa. 199, 133 A. 256; *Ford v. A. E. Dick Co.,* 288 Pa. 140, 135 A. 903; *Slemba v. Hamilton & Sons,* 290 Pa. 267, 138 A. 841.

There can be no interference by the courts with such findings, whether they be based on proved facts or inferences therefrom: *Flucker v. Carnegie Steel Co.*, 263 Pa. 113, 106 A. 192; *Pastelak v. Glen Alden Coal Co.*, 108 Pa. Superior Ct. 89, 164 A. 846.

We do not regard the 6th and 7th findings as inconsistent, or as holding that the employee's death was accidental, within the decisions, because the exertion was not unusual, but in the customary course of his employment.

George Mondiechek testified that while working with deceased he saw him dropping down; that he thought deceased was fixing his shoe; that he saw decedent raise himself up and then fall again; that decedent told him he did not know what happened; that they were loading slate which is a little heavier than coal; that decedent had been shovelling horse-pick about fifteen minutes; that decedent worked with him since the 6th day of June; that after decedent fell, he had a cut on the right side of his head about one inch long.

George Vargo testified that he saw decedent June 30th; that decedent had his head wrapped up; that decedent looked pale; that decedent saw Dr. Yoder the next day; that he saw Dr. Yoder work on decedent's head; that horse-pick is twice as heavy as coal; that decedent was hurt in an auto accident on December 21, 1931, and prior to that he was laying track; that he went loading coal on June 6th; that decedent did not work between December 21st and June 6th; that all of the miners, as a part of their duties, have to load the slate just the same as they load coal; that the slate is heavier, and that if they are in a place and they strike slate, it is part of their work to load that slate.

Dr. R. D. Yoder testified that he saw decedent July 1, 1932, on which day he dressed wound on decedent's head; that the wound was three-quarters of an inch

to one inch long; that the wound was not of a serious nature; that he examined decedent the next day and found evidence of heart trouble; that he treated him in December of 1931 for fractured ribs and a tear of the rectum received in an automobile accident; that said accident was serious; that he treated decedent for six months following the automobile accident; that the head wound healed in seven or eight days and thereafter until July 6th he treated decedent for heart trouble; that when decedent was treated by him on July 1st, he stated that he became dizzy and fell; that he did not think the condition he found decedent in at his home came from shoveling coal; that said condition could not be produced by a strain; that he didn't know what produced the heart block; that he did not think that if a man with a weak heart was shoveling horse-pick he would suffer a heart block; that a heart block does not necessarily mean a weak heart; that he did not think you could get a heart block and a weak heart while doing heavy work; that heart block would be caused by disease or by a growth on the fibers that carry the impulses along the heart; that the cut on the head healed up as rapidly as an average cut of its size and that in his opinion the cut did not contribute in any way to decedent's death; that there was absolutely nothing about the injury to the head which contributed to the development of a heart failure.

Dr. George J. Kastlin testified that he saw decedent on August 11th at the office of Mr. Brenlove; that he saw decedent lying on the floor in what was apparently acute heart failure; that decedent had acute congestive heart failure; that an electro cardiagram was done and it showed complete heart block condition and that it classified the condition as typical form of heart disease with heart failure; that he saw decedent on the 12th and that he had some failure of function of kidneys as a result of the heart failure; that decedent

died suddenly on August 13, 1932; that no autopsy was performed; that decedent must have had the heart condition for some time; that when he saw this patient he was in acute heart failure; that he died of heart failure; that he had heart block for some period or length of time, the extent of which he could not tell; that it was the result of disease.

There is no conflict in the testimony as to the cause of death, to wit: heart disease. The performance of deceased's regular labor with the exertion incident thereto would not constitute an unexpected or fortuitous, untoward or unusual event. The Supreme Court in the case of *Gausman v. R. T. Pearson Co.*, 284 Pa. 348, 131 A. 247, made it clear that even though a physician attributed a stroke to claimant's exertion in the performance of his work and expressed the opinion that but for the work it would not have happened at that time, nevertheless that alone would not constitute an accident. What happened on June 30, 1932, was a natural development of a prior condition. The record in the case is barren of any evidence showing any undesigned, unforeseen or unexpected occurrence.

The Workmen's Compensation Board did not make a finding of over-exertion. The board found that death resulted from heart disease and not from the injury to the head; that the exertion incident to the work precipitated the heart attack and aggravated the disease. The board's findings eliminated over-exertion and found the cause of death was complete heart block, resulting from a progressive disease of the heart and that neither the fall nor the wound on the head received on June 30, 1932, had any appreciable effect in aggravating or accelerating the heart disease.

In *McCauley v. Imperial Woolen Co.*, 261 Pa. 312, 327, 104 A. 617, the court said ...... if the incident which gives rise to the injurious results complained of can be classed properly as a 'mishap' or 'fortuitous'

happening—an 'untoward event, which is not expected or designed'—it is an accident within the meaning of the workmen's compensation law."

In *Lacey v. Washburn & Williams Co.*, 309 Pa. 574, 164 A. 724, the court said, at p. 578: "That which distinguishes an accident from other events is the element of being unforeseen; an accident is an occurrence which proceeds from an unknown cause, or which is an unusual effect of a known cause, and hence unexpected and unforeseen."

The cases cited on behalf of appellant are readily distinguishable from the instant case. In each of them there was some injury to the physical structure or tissues of the body as a result of a strain, sprain or twist. See *Falls v. Tennessee Furniture Co.*, 122 Pa. Superior Ct. 550, 186 A. 272. The instant case is barren of any testimony of that character.

After a careful examination of the testimony to which we have referred at some length, we are of the opinion that there is nothing to indicate that decedent died as a result of injuries sustained from an accident. As stated in *Reffner v. Consolidated Coal Co.*, 121 Pa. Superior Ct. 11, 14, 182 A. 762: "It is well established by our decided cases that disability or death overtaking an employee at his work is not compensable unless the result of an accident, and that disability or death merely hastened by the work in which the employee has been repeatedly engaged cannot be treated as accidental."

The assignments of error are overruled and the order of the lower court is affirmed.