## Maas *v.* Otis Elevator Company, Appellant.

Argued March 6, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

34

*James P. Harris,* for appellant.

*T. G. Wadzinski,* for appellee.

OPINION BY STADTFELD, J., April 22, 1940:

This is a Workmen's Compensation case in which the defendant appeals from the judgment entered by the court of common pleas on the affirmance by the board of an award by the referee.

Edith P. Maas filed a petition for compensation on account of the death of her husband, claiming that he died as a result of an accident while in the employ of the defendant, Otis Elevator Company. The date of the alleged accident and death was August 20, 1937. He left his home, according to the testimony of his widow, at 9:30 A. M. that morning, perfectly well; that prior to said date "he seemed perfectly well, never complained." Ralph Maas had been in the employ of the Otis Elevator Company as an inspector and repairman for many years. On this day about 9:00 A. M., he went to the three-story store of the Peoples Outfitting Company on South Main Street, Wilkes-Barre, to make a routine inspection. Inspection of this elevator had been part of his work for many years. The store did not open until 9:30 A. M. At or about that time, he took the elevator to the third or top floor of the building, walked to the rear of the building, and with his tool box on his arm, went up to the roof by way of an outside metal ladder fourteen feet high.

From this point, it was a short distance and beyond a four foot partition to the penthouse or elevator house. This house was about ten feet high and about eight feet square and was built of metal laths and plaster. Inside were the pulleys and electrical machinery to operate the elevator. There were two platforms in it, one upon which the machinery was fastened and extended within about sixteen inches of the side of the elevator house. About forty-five inches below this platform, was another platform which might be called the floor of this house.

About half an hour after Maas had gone up on the roof, an employee of the Peoples Outfitting Company, Ambrose Reese, heard a loud groan and then a heavy thud. He went immediately to the roof and found Mr. Maas lying on a platform in the elevator house. He quickly secured help and got Mr. Maas outside the elevator house. Upon the doctor's arrival shortly thereafter, he was pronounced dead.

A post-mortem was performed which showed that the cause of death was acute cardiac failure. Dr. M. C. Rumbaugh, the family physician, testified that in his opinion, the cause of the death was the strain or effort Maas "experienced while getting up on the ladder onto the roof." The death certificate gave as the cause of death: "Cardiac dilatation, fatty infiltration myocarditis."

It is contended on behalf of the defendant that there was no proof of an accident. Ralph Maas had been inspecting this elevator in this building for a period of more than ten years. He always went to the roof of the building by using this same ladder. Ambrose Reese testified that he had "seen him use the outside ladder dozens of times"; that he had never seen him use the enclosed ladder which was the only other way to get to the roof; that he made frequent inspections. Joseph W. Lisman testified that this outside ladder had been the same for the previous fifteen years; the job on that

particular day was merely a routine inspection; and the elevator was not out of order. This testimony was not disputed.

Significance is attached to the fact that he had to carry a tool box to the roof. There was nothing unusual about that as he always took his box up with him. There was no other way to get it up except by rope and Lisman never saw him do that. There was testimony that the weather was "very, very hot." This incident occurred early in the day in the month of August, and there was no proof that it was unusually hot. The conclusion of the physician who testified for claimant was based, moreover, on the step-climbing, not on the heat. He charged the death to no incident that can be classed as unusual or untoward. The combination of circumstances referred to by the board was a combination that would occur on practically any inspection made during the summer months; there was nothing unusual.

It is also undisputed that the heart attack did not occur until one-half hour after Maas had climbed onto the roof. He was there when Reese went to work and Reese testified that "it happened to be just about half hour later."

The testimony of Dr. M. C. Rumbaugh, the family physician, was that the autopsy revealed cardiac dilatation, fatty infiltration myocarditis. He further stated that he had examined Mr. Maas' heart on June 30, 1936; that his heart was all right at that time. Dr. Rumbaugh's conclusion as to the cause of the collapse is seriously discredited by the fact that the attack did not occur for more than one-half hour after the exertion. He testified that it was possible that a man could exert himself and not have any results from it for half an hour but he said that usually, from his experience, the result follows almost immediately.

In the language of Judge CUNNINGHAM in *O'Neill v. Lehigh Coal & Navigation Co.*, 108 Pa. Superior Ct. 425, 426, 427, 165 A. 60: "In considering and dispos-

ing of this appeal, we are thus met at the very threshold with this question of law: Is there any legally competent evidence upon this record from which the compensation authorities could reasonably conclude that claimant's husband met with an 'accident', within the meaning of our compensation law. That is the controlling question; claimant must first show that decedent suffered some 'accident'; only after she has done that, is she in a position to ask the compensation authorities to consider its alleged harmful results: *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199, 205. We are not concerned about the opinion of medical experts, relative to causal connections, in this, or in any, compensation case until we have first found direct or circumstantial evidence of an accident."

The instant case is not ruled by *Watkins v. Pittsburgh Coal Co.*, 278 Pa. 463, 123 A. 461, cited and relied upon by claimant. In that case, the body of the employee was found lying near the foot of a stairway, with a cut on the forehead and a bruise on the cheek and all the circumstances tended to show the happening of an accident. But in the instant case, there is not a scintilla of evidence of any objective happening outside of the usual and normal course of events to be expected in the performance of decedent's ordinary daily work, nor is there any evidence from which the inference could be drawn that there was anything unusual about the exertion put forth by him in climbing the ladder with the tool box on his arm. None of his activities that morning involved any extraordinary exertion or stress; they were merely the usual and ordinary work in which he had, for many years prior thereto, been engaged.

The other cases cited by appellee are readily distinguishable from the instant case. In nearly every one, there was evidence establishing the lifting or carrying of heavy weights or extra or unusual physical exertion. The mere fact that this employee was stricken while in the course of his employment, instead of at his home,

or on his way to work, raises no presumption in favor of the claimant. Before she is entitled to an award, the evidence submitted in her behalf, must show either directly or circumstantially, that her husband sustained an accident, within the meaning of the statute.

In the case of *Barr v. Atlantic Elevator Co.*, 124 Pa. Superior Ct. 57, 187 A. 815, the employee was on a repair job on an elevator and did some extra heavy work; the post-mortem revealed no heart condition unusual for a man of his age; and he evidently felt an almost immediate reaction from his exertion. In the course of his repair work, he was obliged to carry from the top floor to the roof, four cables which weighed 60 pounds each and this was not in the line of his usual work. He complained of a sharp pain in his heart on coming down from the roof after laying out the last one. We have no proof of such unusual exertion in the instant case. The only thing that Maas carried to the roof was his kit of repair tools as he had been doing for many years. The collapse did not occur until after the very unusual interval of one-half hour. Carrying a tool box up a fourteen foot ladder is certainly not comparable with making four trips up a flight of stairs, carrying each time a sixty pound cable. The former was part of the usual routine; the latter was unusual.

In *Samoskie v. P. & R. C. & I. Co.*, 280 Pa. 203, 124 A. 471, the decedent pushed a heavy car and suffered a stroke within from four to fifteen minutes; in *Calderwood v. Consolidated Lumber & Supply Co.*, 91 Pa. Superior Ct. 189, the attack came "just after" the employee stopped his work; and in *Skroki v. Crucible Steel Co.*, 292 Pa. 550, 141 A. 480, Skroki was stricken while carrying heavy steel bars in a hot room.

In *Witt v. Witt's Food Market*, 122 Pa. Superior Ct. 557, 186 A. 275, the employee lifted a quarter of beef and placed it on a hook four feet from the floor.

As the record is barren of any evidence tending to

establish an accident within the meaning of the statute, the assignments of error must be sustained.

The judgment is reversed and here entered in favor of defendant.