Thomas *v.* Tasty Baking Company et al.,
Appellants.

Argued March 15, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Allan K. Grim,* with him *Stevens & Lee,* for appellants.

*John W. Speicher,* with him *C. Wilson Austin* and *Geo. Eves* for appellee.

OPINION BY STADTFELD, J., May 1, 1940:

This is a workmen's compensation case. In it the widow of David E. Thomas is seeking compensation for the death of her husband in the course of his employment. The case was started by David E. Thomas in his lifetime. After the hearing on his claim petition had been held, he died and the case then continued as a claim by his widow.

David E. Thomas filed his claim petition with the Workmen's Compensation Board. The defendant and insurance carrier filed an answer. After a hearing, the referee, A. H. Young, filed an opinion disallowing compensation on the ground that the claimant had failed to show that his disability was due to an accident. Thomas appealed to the Workmen's Compensation Board which held that the referee was in error in holding that Thomas had not sustained an accident, but, because Thomas had died since the hearing before the referee, it made no award but remanded the case to the referee to have placed upon the record, the names of Thomas' dependents and the cause of his death. After additional

testimony had been taken by the referee supplying the information requested by the board, the referee, without changing substantially his findings of fact, but following the opinion of the board, made an award of compensation. The defendant and insurance carrier appealed to the Workmen's Compensation Board, which sustained the award. An appeal was taken to the Court of Common Pleas of Berks County, which, speaking through SCHAEFFER, P. J. sustained the award of compensation. This appeal is from the order awarding compensation to the widow and son of David E. Thomas and the judgment entered thereon.

David E. Thomas, the original claimant, was employed by Tasty Baking Company for about eight years prior to January, 1936, as a supervisor of the men who delivered the products of the company in Montgomery, Berks and Schuylkill counties. These men, nine in number, received the baked goods consigned to them at the railroad station near them and by means of automobile trucks made delivery to grocery stores in their territories. The deliveries were made over established routes which were followed daily. These routes ran both on and off main highways. As supervisor of these men, it was Thomas' duty to assist them in their sales and deliveries. To do this, he frequently accompanied the men on their routes to remedy faults in their work and to show them how to increase their sales. He also ironed out disputes that may have arisen between deliverymen and customers. Also, when any of the deliverymen were disabled, it was his duty to take over the route of the disabled distributor and make his deliveries for him.

On January 2d to 9th, 1936 (except January 5th), he took over the route of the distributor who delivered products from Tamaqua, Schuylkill County. On January 10th and 11th, he took over the route of the driver who distributed from Pottstown, Montgomery County. On January 24th and 25th he handled the Tamaqua

route again. From January 29th to February 8th he again took over the Tamaqua route.

During this period in which Thomas made deliveries, there were several heavy snows. The snow was a foot deep on the level and in drifts it was six or seven feet deep. The weather was extremely cold. The snow and ice formed ruts on the highways. Because of the deep snow there was one-way traffic at some places. Thomas' truck at times became stuck in the snow, necessitating his shoveling it out of the snow. He had to do this two or three times a day. The shoveling took between fifteen minutes and half an hour. He also had to put chains on the tires and get the truck out of the snow when it was stuck. To do this he had to jack up the truck, and at times to crawl under it. These things made him work faster than usual to cover his route. They also made his working days longer than usual. Some times he worked until eleven o'clock at night. These weather conditions and the heavy work which they brought on continued during the entire period of his deliveries.

For at least three years and possibly for twenty years prior to January, 1936, Thomas was afflicted with heart disease, which came from a venereal infection. In 1933 he had been unable to work for about six months due to this and a tubercular infection. During this period, he spent some time in a sanitarium.

On January 4th, after shoveling snow while covering his route, Thomas felt a pain in his chest which extended from the left side to the middle of his chest and down his left arm to his elbow. It lasted about ten or twenty minutes. He also noticed a shortness of breath. He again noticed this pain on January 6th, as also a swelling of his ankles. He had pains a number of times between January 6th and February 8th. On January 6th, he went to his physician, Dr. Carl High, who gave him some heart medicine and advised him to go home and rest. Thomas did not heed this advice but kept on working, doing the same kind of strenuous work

he had done before. He consulted his physician again on January 13th and January 23d. On February 9th, at about 1:00 A. M., Thomas, while at home, had a severe attack. He described it as "a very heavy pressing in my chest, and continual forming of mucus, which it caused me to spit out, and it was sort of a bronze color, appeared something like blood. And the pain was quite severe. And my heart felt as if it was going—as if each side was trying to get ahead of the other. And I had a rather choking feeling in my throat. A very uncomfortable feeling." Dr. High, who was called about 2:00 o'clock described the condition as "pulmonary edema", which, he explained, was "fluid getting into the lung tissue due to one side of the heart not working in harmony with the other." He described Thomas' heart condition as "an infection of the heart valves due to damage by infection of a specific type, and also an injury to the larger blood vessels due to the same cause"; that the disease of the heart valves was due to a luetic infection caused by an organism, treponema pallidum, the source of which was a venereal infection.

From February 9th, the day of his severe attack, Thomas was completely disabled. He died, as a result of the same disease which produced his disability, on December 25, 1936, at the age of 40 years.

The sole question in this appeal is whether there is sufficient legally competent evidence to sustain the finding of an accident which would entitle claimant to recover.

In the language of Judge CUNNINGHAM in *O'Neill v. Lehigh Coal & Navigation Co.*, 108 Pa. Superior Ct. 425, 426, 427, 165 A. 60: "In considering and disposing of this appeal, we are thus met at the very threshold with this question of law: Is there any legally competent evidence upon this record from which the compensation authorities could reasonably conclude that claimant's husband met with an 'accident', within the meaning of our compensation law. That is the controlling

question; claimant must first show that decedent suffered some 'accident'; only after she has done that, is she in a position to ask the compensation authorities to consider its alleged harmful results: *Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 205. We are not concerned about the opinions of medical experts, relative to causal connections, in this, or in any, compensation case until we have first found direct or circumstantial evidence of an accident."

The Workmen's Compensation Act (1915 P. L. 736, sec. 301, 1937 P. L. 1552, sec. 1, 77 PS 431) provides: "...... Compensation for personal injury to, or for the death of an employee, by an *accident,* in the course of his employment, shall be paid in all cases by the employer ......" (Italics supplied). It also says (1915 P. L. 736, sec. 301, 1937 P. L. 1552, sec. 1, 77 PS 411): "The terms 'injury' and 'personal injury' ...... shall be construed to mean only violence to the physical structure of the body ......"

The Supreme Court in *Lacey v. Washburn & Williams Co.,* 309 Pa. 574, 164 A. 724, has interpreted the word "accident", saying p. 577: "The word accident—as used in the act—must be interpreted in its usual, ordinary, popular sense. Webster has defined it as 'an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency' ...... Our decisions interpreting the word as used in our compensation law have substantially clung to this meaning."

The syllabus to *Swiderski v. Glen Alden Coal Co.,* 114 Pa. Superior Ct. 21, 173 A. 865, says: "Where an employee, while in the course of his employment, is performing hard labor but of the same kind and in the same manner as he had been accustomed to perform, and while so engaged is fatally stricken, the performance of such labor is not of itself over-exertion and does not constitute an accident within the meaning of the Workmen's Compensation Act. The term 'over-exer-

tion' is used in the decisions in a limited sense which excludes such exertion as has been usually put forth by the particular employee as a part of his labors."

*Kincel v. Feraco Construction Co.,* 113 Pa. Superior Ct. 61, 172 A. 11, and *Amentlar v. New Upper Lehigh Coal Co.,* 131 Pa. Superior Ct. 97, 198 A. 678, are in many respects similar to the instant case. In the Kincel case, the employee's usual work was that of a miner. For a period of two weeks he had been doing road construction work when he collapsed while pushing a heavy rock. In that case, it was held that two weeks was a sufficient time to bring the employee within the class of employees doing their usual work. In the Amentlar case, an employee, whose usual trade was that of a miner, worked for three weeks at a different job, namely the construction of a shipping platform. He was dragging a heavy pole when he collapsed. It was held that he was performing his usual work.

The lower court seemed to be of the opinion that the present case is controlled by the line of cases of which *Witt v. Witt's Food Market,* 122 Pa. Superior Ct. 557, 186 A. 275, is one. That line of cases, however, is distinguishable for the reason that in each of those cases the heavy exertion caused a rupture, sprain or break or some other internal violence to the physical structure of the body.

There was no sprain or broken bone or other violence to the physical structure of the body in the present case from which an accident can be inferred. The damage in the present case was due to an organism, a germ, treponema pallidum, which is syphilis.

In the very recent case of *Parks v. Miller Printing Machine Co.,* 336 Pa. 455, 9 A. 2d 742, Mr. Justice STERN has written a very comprehensive and exhaustive opinion wherein he has carefully analyzed the cases which constitute "an accident" within the meaning of the Workmen's Compensation Act and compensable as such, and differentiates those which are not compensable.

It was argued that it was Thomas' exertion on the last two days of his work which was the cause of his disability. The findings of fact and evidence, however, are contrary to that. They show that the work was equally strenuous during the entire five week period. The referee's finding of fact relative to this, which finding was not changed by the board, is as follows: "During this period from January 2, 1936 to February 8, 1936, traveling was very difficult because of snow drifts on the roads and the claimant was obliged on various occasions, to get out of the truck he was driving to put on chains and shovel snow. This occurred frequently from January 2, 1936, to February 8, 1936. He was required to do snow shoveling two or three times a day, in periods of fifteen minutes to a half hour."

There is no finding that there was anything unusual about Thomas' work on the last two days before his disability commenced.

The Supreme Court has said in the recent case of *Adamchick v. Wyoming Valley Collieries Co.,* 332 Pa. 401, 410, 3 A. 2d 377, 381: "...... An accident cannot be inferred merely from an injury. There must be some evidence of an accident, either direct or circumstantial, in the latter instance clearly and logically indicating it."

That decedent's heart condition had existed for a long period prior to his final disablement was apparent from the uncontradicted testimony. As to its character, his own physician, Dr. C. M. High, testified in part as follows: "Q. Can you tell us what it (the disease) is, Doctor? A. It is an infection of the heart valves due to damage by infection of a specific type, and also an injury to the larger blood vessels due to the same cause. Q. Due to an infectious process. A. That is right. Q. Well, this man does have an infectious process; there is no question about that, is there, Doctor? A. No doubt. Q. And that is the cause of his heart damage,

is it not? A. Infection is the cause of his heart damage, yes, sir."

We feel that the claimant has not met the burden imposed upon her of producing evidence which clearly and logically shows an accident. She has not shown that anything unexpected or fortuitous happened. When Thomas' physical condition and the nature of his work are considered, certainly it cannot be said that the collapse of his heart was fortuitous. And in view of the continuous bad weather it cannot be said that the further bad weather that was experienced from day to day and the situations which arose from it were fortuitous or unexpected.

The assignments of error are sustained, the judgment is reversed and now entered for the defendant.