Opinion by
 

 Cunningham, J.,
 

 It is clear, under all the evidence in this workmen’s compensation case, that John Royko, the husband of the claimant, while in the course of his employment on December 16, 1937, as a miner in one of the defendant company’s coal mines, suffered an internal
 
 injury
 
 to the physical structure of his body, consisting of the rupture of an ulcer which for a considerable, but indefinite, period of time had been developing in his jejunum— the portion of the small intestine between the duodenum and ileum — and that the immediate cause of his death on the following day was a “fulminating peritonitis” resulting from that rupture.
 

 This appeal is by the employer and its insurance carrier from the judgment entered by the court below upon an award by the referee and board of compensation to his widow and three children under sixteen years of age.
 

 Appellants offered no testimony before the referee and the question with which we are now concerned is whether claimant, by competent and substantial evidence, met the burden imposed upon her of showing that the fatal injury to her husband was “an injury by an
 
 accident
 
 in the course of his employment,” within the meaning of Section 301 of our Workmen’s Com
 
 *451
 
 pensation Act of June
 
 2,
 
 1915, P. L. 736, 77 PS §§411, 431.
 

 Our Supreme Court has laid down these guiding principles of law for the disposition of cases of this nature :
 

 Death or disability from a natural cause overtaking an employee while engaged in his accustomed work in the usual manner cannot be considered as accidental, though hastened by his work.
 

 On the other hand, if there is substantial and competent evidence of an accident, the mere fact that the employee was afflicted with a preexisting physical defect or ailment which rendered him more susceptible to injury than an entirely normal person will not prevent an award. See
 
 Gausman v. Pearson Co.,
 
 284 Pa. 348, 131 A. 247 and
 
 Lesko v. Lehigh Valley Coal Co.,
 
 270 Pa. 15, 112 A. 768, and cases there cited.
 

 In cases in which a preexisting ailment is a factor, the claimant has the burden of showing by competent medical evidence, and beyond mere conjecture, that the disability or death resulted from the alleged accident and not from the normal progress of the disease:
 
 Monahan v. Seeds & Durham et al.,
 
 336 Pa. 67, 6 A. 2d 889.
 

 In
 
 Adamchick v. Wyoming Valley Collieries Co.,
 
 332 Pa. 401, 410, 3 A. 2d 377, it was said, “......to secure compensation there must be proof both of an accident and of an injury; an accident cannot be inferred merely from an injury. There must be some evidence of an accident, either direct or circumstantial, in the latter instance clearly and logically indicating it...... Nor can an injury be inferred simply because there was an accident. There must be proof that the injury resulted from an accident.”
 

 With these principles in mind we turn to an examination of the record for the purpose of ascertaining whether it contains any evidence, of the required quality, sustaining the findings of the compensation authorities.
 

 
 *452
 
 In the first place, is there any evidence of the happening of any undesigned, unexpected or fortuitous,
 
 external
 
 event, outside of the usual incidents attendant upon the work in which decedent was engaged when the rupture occurred and which he had been doing for a long time.
 

 The only competent testimony relative to external occurrences is that of decedent’s “buddy,” George Havrilak. These material facts appear from his testimony:
 

 For about a year decedent and Havrilak had been cutting an air course, designated as “Main A air course” in the Beaverdale mine; it was six feet high, ten feet wide, and was being driven through a stratum of coal three feet thick, resting upon a bed of rock and fire clay, three feet deep and referred to by the witness as the “bottom.” As the work progressed the coal was loaded on mine cars and the broken up pieces of rock and clay thrown aside on the “gob.”
 

 Referring to the last day upon which decedent worked, his “buddy” testified: “Q. What time did you start to work on December 16th? A. Well, just start about half past seven....... Q. Now on December 16th what kind of work was you doing in your working place? A. Didn’t do nothing else. We had bottom shot the night before. When go home why we didn’t have no smoke. Bottom was shot already. We just go in there and start clean up the shot bottom....... Q. Now what was the condition of your buddy, if you know? A. He was always good what I know....... Q. How did he do his work? A. Good....... Q. Same as any other day? A. Same thing....... Q. And then what happened close to nine o’clock? A. When he fall down, he was shoveling rock. When he was shoveling rock, he had about three pieces of rock, fire clay on his shovel. He was throwing that in the gob....... Q. Can you tell us what size pieces they were? A. About like my head....... Q. Go ahead. A. I was working about
 
 *453
 
 six, seven feet away from Mm, you know, when he hollered out, you know, when he fall down, and that shovel, them pieces of rock was on the top of the bottom.- ...... Q. All right, will you explain to the referee just what you saw when John hollered, ‘Ouch!’ A. He was laying on top of the bottom, and he had his hands like, you know, on his belly, see, and he was laying on top of the bottom. I going in, pick him up. He said, ‘I feel sick, don’t feel good.’ He had pain in his side. I said, ‘Can’t you walk?’ He said, ‘No.’......”
 

 The impression left by Havrilak’s testimony in chief that decedent fell down and was lying on top of the bottom was materially modified during his cross-examination. Excerpts therefrom read: “Q. Now had you taken the coal out? A. Sure. Q. When was the coal taken out? A. The day before. Q. And as you went along in the entry, you had taken rock out too, is that right? A. Yes. Q. Was that the day before you had taken out three feet of coal, and you still had three feet of rock, is that right? A. Yes....... Q. And he was just taking a shovelful of this rock to throw it in the gob below, is that right? A. Right. Q. Now you didn’t see anything happen to him at all? A. No, I didn’t see him....... Q. Now he was reaching over this rock to shovel this coal, or did you know? Is that when you saw him with his hands on his stomach? A. Yes. Q. In this position? A. Yes, right on his belly. ...... Q. He was merely leaning over this bottom rock holding his belly? A. Yes. Q. You had seen him yourself a fraction of a second before that? A. Yes. He was shoveling, the same time I was throwing it, he was shoveling rock....... Q. Now you had been loading this bottom rock and this clay out of this place for how long? A. About a year. Q. So this day you were doing the same work you had been doing for about a year? A. Yes....... Q. All you know is that he was holding his belly and said he was sick, and leaning against the rock? A. Yes, leaning against the rock.
 
 *454
 
 ...... Q. Now when you said something about picking him up, you don’t mean he had been down on the bottom? A. His feet were. Q. In other words, he was standing and leaning against this shelf of bottom rock? A. Yes. Q. He wasn’t off his feet? A. No, his feet were on the ground....... Q. He was holding his stomach at the time? A. Yes. Q. You went over to him leaning over against this rock? A. I just picked him up and asked him, ‘What’s the matter?’ Q. You just straightened him up? A. Yes. Q. You didn’t pick him up off the bottom? A. No.”
 

 Manifestly, nothing happened externally to decedent outside of the usual course of events. He was merely doing his usual work in the usual way. Neither the referee nor board made specific findings of the putting forth of any sudden or unusual effort.
 

 The board made no formal findings of fact but in the course of its opinion said: “It appears that the shovel full of rock weighed from sixty to seventy-five pounds.” Then, citing
 
 Falls v. Tennessee Furniture Co.,
 
 122 Pa. Superior Ct. 550, 186 A. 272, it affirmed the award of the referee upon the theory that the rupture of the ulcer “was an abnormal development resulting from the strain in lifting the heavy shovel full of rock.”
 

 We are unable to find any substantial evidence upon the record indicative of the weight of the substance upon the shovel (in some portions of the testimony described as rock and elsewhere as fire clay), or which would sustain an inference that the rupture of the ulcer was attributable to a strain or heavy lifting in the course of decedent’s employment, rather than to its normal development.
 

 In an effort to show the load upon the shovel was unusually heavy, Havrilak was led to say he thought one of the three pieces of clay weighed about twenty to twenty-five pounds, but he added: “I am not sure. I cannot say that. I never weighed a rock.”
 

 
 *455
 
 An excerpt from his cross-examination reads: “Q. And you mean to say that you think a piece of rock as big as your head weighs twenty-five pounds? A. I don’t know. I just said that. I’m not sure. Fire clay is pretty heavy. Q. This was bottom rock? A. It was fire clay. Q. This wasn’t bottom rock, fire clay, and you think it would weigh about as much as your head? A. I don’t know. I can’t say that. Q. You are just guessing? A. Just guessing. That’s all I can say.
 

 Dr. H. G. Diffenderfer was the only medical witness called by claimant. He arrived at decedent’s home shortly after the latter was brought from the mine and found him suffering excruciating pain, vomiting and in a condition of shock. Suspecting a ruptured ulcer, Dr. Diffenderfer had decedent promptly removed to a hospital for an operation which, when performed by the witness and Dr. R. O. Davis, disclosed an ulcer in the jejunum about the size of a lead pencil with the “mucosa of the jejunum” protruding through a ragged opening.
 

 The only definite opinion expressed by Dr. Diffenderfer was that the ulcer had ruptured while decedent was at work in the mine. It was thus expressed: “Q. Did you form a conclusion, Doctor, as to the rupturing of this ulcer? A. Yes. From the history I received, I felt that the time of rupture was about when the man was shoveling the rock. Personally, I feel that the cause of his falling forward onto the ledge of rock where they were working, was due to the shock from the perforation. Q. Then I take it Doctor that you feel that the actual perforation in this case came about at the time when he was shoveling this rock or lifting this rock at the time, is that right? A. I do.”
 

 Such testimony furnishes no basis for an award. The exertion incident to the performance by an employee of his usual work in the usual way, although the work
 
 *456
 
 may be hard, cannot be said to be unusual, or over exertion.
 

 The only statement of Dr. Diffenderfer with respect to any possible connection between decedent’s shoveling of clay and rock that morning and the perforation of the ulcer reads: “Q. Doctor, one more question. You have heard the buddy testify as to the number of pieces of rock that the decedent had on his shovel and the size of these three pieces of rock. What, in your opinion, had the lifting of these three pieces of rock to do with the perforation in this case? A. It could be an exciting cause. Q. Well, do you feel, Doctor, that it was? A. Yes, I feel it was at
 
 that túne
 
 because with the history I got, that is when the perforation
 
 happened,
 
 I imagine, lifting that weight and all the circumstances connected, that is when it
 
 happened.
 
 Q. That is when it happened? A. Yes.” (Italics supplied.)
 

 The witness seems to have thought his opinion was desired as to the time at which the perforation occurred. In any event his testimony does not meet the test discussed in
 
 Elonis v. Lytle Coal Co.,
 
 134 Pa. Superior Ct. 264, 3 A. 2d 995.
 

 Moreover, the doctor’s testimony on cross-examination demonstrates that any suggestion of a causal connection between the shoveling and the perforation, as distinguished from the natural progress and development of the ulcer, would be pure conjecture. He there testified: “Q. But the rupture of an ulcer is not an uncommon experience? A. No. Q. That happens very frequently in histories of ulcers? A. That is right. Q. They go along over a period of time, as the walls thin out, finally the rupture occurs, and when the rupture occurs is when you experience the excruciating pain, is that correct? A. Yes. Q. You could many times have no apparent reason other than the progress of the ulcer? A. Of the erosion, yes. Q.
 
 So that [it] is altogether possible in this case, too, is it not, that this was the logical outcome of the progress of the ulcerated
 
 
 *457
 

 condition? A. This was the result of some pathology in that area of the jejunum.”
 
 (Italics supplied.)
 

 We said in
 
 Falls v. Tennessee Furniture Co.,
 
 supra, (the gastric ulcer case relied upon by the board), and in several other cases that an accidental injury “may occur in the course of the normal duties of an employee and without overexertion when a strain, sprain, or twist causes a break or sudden change in the physical structure or tissues of the body”; but the medical testimony in that case as in
 
 Keck v. John Mullen Construction Co. et al.,
 
 113 Pa. Superior Ct. 564, 173 A. 863, (where the decedent was subjected to an unusual effort)., was to the effect that the ulcer had not ruptured in the usual and normal progress of the disease but had been split as the result of excessive intra-abdominal pressure.
 

 It may be frankly conceded that our efforts to dispose of these borderline cases upon their merits have resulted in an apparent lack of harmony in some of our prior decisions; but our Supreme Court has admonished us, as well as the referees, the board and the common pleas courts, in such recent cases as
 
 Adamchick v. Wyoming Valley Collieries Co.,
 
 supra;
 
 Harring v. Glen Alden Coal Co.,
 
 332 Pa. 410, 3 A. 2d 381; and
 
 Crispin v. Leedom & Worrall Co.,
 
 341 Pa. 325, 19 A. 2d 400, that an accident may not be inferred merely because an injury has been suffered, nor can an injury be inferred simply because an accident has happened to an employee. In order to sustain an award, the record must disclose competent and substantial evidence, either direct or circumstantial, of the happening to an employee of something undesigned, unexpected or fortuitous, outside of the ordinary course of events, and also of a fatal or disabling injury resulting therefrom.
 

 A review, however, of the decided cases in which a preexisting weakness, or an actually diseased condition, of an organ or organs, part or parts, of the employee’s body became an important factor in determining whether compensation should be awarded or dis
 
 *458
 
 allowed for a death or an injury, discloses they may be grouped into three general classifications:
 

 (1) Those in which the employee had a preexisting disease which had progressed to the point where the continuation of his normal work was dangerous. Notwithstanding his physical condition, the employee continued at work until stricken while performing his usual work in the usual way and without the happening of any unexpected external occurrence.
 

 In such cases there was nothing accidental about the death or disability, and compensation was denied.
 
 Pelusi v. Mandes,
 
 109 Pa. Superior Ct. 439, 167 A. 456, is an example of this class. There the testimony showed the deceased was suffering from a “chronic, degenerative disease of the circulatory system and of the kidneys, with a specialized diseased process involving the arch of the aorta ......a lesion known as an aneurysm.” His life was constantly in jeopardy, and any exertion, however slight, might prove fatal.
 

 The duties of the deceased consisted of pushing a wheelbarrow, loaded with cement, along a level scaffold and delivering the cement to the masons. On the day of his death he wheeled his. barrow a distance of about seven feet and stopped for a moment to talk to a fellow employee. He collapsed suddenly and died almost instantly from a rupture of the aneurysm.
 

 In denying compensation, the court said there was no proof of any unexpected, undesigned, or fortuitous event, and the mere fact that the death was traceable to the decedent’s act in pushing the wheelbarrow, in the sense that he probably would not have died that day if he had not been working, was not sufficient to sustain the award.
 

 In the same class are
 
 Gausman v. Pearson,
 
 supra;
 
 Diriscavage v. Pennsylvania Coal Co.,
 
 96 Pa. Superior Ct. 189;
 
 Weissman v. Philadelphia Electric Co.,
 
 111 Pa. Superior Ct. 353, 170 A. 318;
 
 McFadden v. Lehigh Navigation Coal Co.,
 
 111 Pa. Superior Ct. 501, 170 A.
 
 *459
 
 314;
 
 Kincel v. Feraco Construction Co.,
 
 113 Pa. Superior Ct. 61, 172 A. 11;
 
 Mager v. State Workmen’s Insurance Fund,
 
 127 Pa. Superior Ct. 438, 193 A. 155;
 
 Adams v. W. J. Rainey, Inc.,
 
 133 Pa. Superior Ct. 538, 3 A. 2d 270;
 
 Maas v. Otis Elevator Co.,
 
 140 Pa. Superior Ct. 33, 12 A. 2d 814;
 
 Thomas v. Tasty Baking Co.,
 
 140 Pa. Superior Ct. 76, 13 A. 2d 100;
 
 Pirillo v. Barber Asphalt Co.,
 
 140 Pa. Superior Ct. 334, 13 A. 2d 906, and
 
 Crispin v. Leedom and Worrall Co.,
 
 341 Pa. 325, 19 A. 2d 400.
 

 It should also be noted that there are numerous instances in which compensation was denied because of lack of proof, of the required standard, that death or disability had resulted from an alleged accident rather than from a natural cause. These cases are cited in the footnote.
 
 [1]
 

 
 *460
 
 (2) A second class of cases consists of those in which a weakened organ collapses by reason of some strain upon it, or a preexisting chronic condition is so aggravated that death or disability ensues, but the strain or aggravation is attributable to some external unexpected, fortuitous and untoward, occurrence aside from the usual course of events, amounting to an accident within the meaning of the statute and, therefore, making the death or injury compensable.
 

 Thus in
 
 Clark v. Lehigh Valley Coal Co.,
 
 264 Pa. 529, 107 A. 858, the employee had a weakened aorta which ruptured while at work as the result of vomiting. In
 
 Yodis v. Philadelphia and Reading Coal and Iron Co.,
 
 269 Pa. 586, 113 A. 73, the deceased died as a result of the rupture of an artery following a blow on the head. In
 
 Guyer v. Equitable Gas Co.,
 
 279 Pa. 5, 123 A. 590, a diseased pancreas was ruptured by a fall. In
 
 Dewees v. Day,
 
 291 Pa. 379, 140 A. 345, a fall aggravated a latent arthritic condition. In
 
 Jones v. United Iron and Metal Co.,
 
 99 Pa. Superior Ct. 394, a fall aggravated a condition of chronic myocarditis. In
 
 Kotkoskie v. Northwestern Mining and Exchange Co.,
 
 105 Pa. Superior Ct. 480, 161 A. 480, the employee died of a ruptured blood vessel sustained while pushing a loaded coal car where the cargo had become wedged against the roof of a tunnel. Although the act of pushing the car was voluntary, it is apparent that the sticking of its load against the roof was an undesigned and fortuitous event, and was therefore accidental. In
 
 Mohr v. Desimone and Sayers,
 
 110 Pa. Superior Ct. 44, 167 A. 504, an arthritic condition was aggravated by a fall. In
 
 Lackner v. Pierre, Inc.,
 
 120 Pa. Superior Ct. 50, 181 A. 845, the employee, who had arteriosclerosis, suffered a cerebral hemorrhage as the result of a fall. In
 
 Hill v. Thomas B. Gassner Co.,
 
 124 Pa. Superior Ct. 217, 188 A. 382, the decedent’s collapse was the result of heart
 
 *461
 
 failure occasioned by strain in attempting to push a stalled automobile, while in
 
 Strode v. Donahoe’s Fifth Avenue Store,
 
 127 Pa. Superior Ct. 231, 193 A. 86, the deceased suffered a coronary occlusion resulting from the effort of trying to open a sliding door which for some unexplained reason was stuck. In both of these cases the decedent’s act was intentional, but the effort was necessitated by a fortuitous event.
 

 Of course, in this line of cases there is always present the problem whether or not the event inducing the death, or disability, can properly be termed an accident. Thus in
 
 Hoffman v. Rhoads Construction Co.,
 
 113 Pa. Superior Ct. 55, 172 A. 33, the employee’s death was due to a dilatation of the heart induced by the intensity of his emotions following a heated argument with his foreman. It was held there was no accident.
 

 (3) The third class of cases to which attention should be directed are those in which an employee’s heart gives out, or some other organ is injuriously affected, by reason of what is sometimes termed “overexertion,” but is more accurately described as “unusual” exertion. In this class awards have been sustained.
 

 An illustration is furnished by
 
 Murphy v. Philadelphia and Reading Coal and Iron Co.,
 
 98 Pa. Superior Ct. 108, where it appeared that the employee, who had arteriosclerosis, was engaged in shoveling rock, coal and dirt and that it was his duty to throw the contents of the shovel a distance of ten feet and over a partition which was four or five feet high. He collapsed, the injury being due to a ruptured blood vessel induced by the strenuous effort of the work. It further appeared that he had never done such work before. In allowing compensation the court pointed out that the employee was not performing his usual work when he collapsed, and that extraordinary exertion was necessary to do the work. Such a combination of circumstances was held to constitute an accident within the meaning of the statute.
 

 
 *462
 
 Similar cases are
 
 Durga v. Williams,
 
 89 Pa. Superior Ct. 156, where the employee singlehandedly moved a two hundred pound scoop ordinarily moved by two men;
 
 Honis v. Coxe Brothers,
 
 95 Pa. Superior Ct. 209, where the deceased, a miner, exerted unusual effort in removing a large rock;
 
 McCoy v. Spriggs,
 
 102 Pa. Superior Ct. 500,157 A. 523, where an attack of apoplexy resulted from a friendly wrestling match;
 
 Hughes v. Prizer-Painter Stove Works,
 
 109 Pa. Superior Ct. 53, 165 A. 527, where the deceased was cleaning scale from a boiler, which was not his usual work;
 
 Barr v. Atlantic Elevator Co.,
 
 124 Pa. Superior Ct. 57, 187 A. 815, where the deceased collapsed after carrying heavy cables up a flight of stairs, this being unusual work for him. See also
 
 Samoskie v. Philadelphia and Reading Coal and Iron Co.,
 
 280 Pa. 203, 124 A. 471;
 
 Calderwood v. Consolidated Lumber Co.,
 
 91 Pa. Superior Ct. 189;
 
 Zborovian v. Suffolk Anthracite Co.,
 
 93 Pa. Superior Ct. 320;
 
 Foster v. State College Borough,
 
 124 Pa. Superior Ct. 492, 189 A. 786; and
 
 Viehdorfer v. Cherry Run Coal Co.,
 
 125 Pa. Superior Ct. 201, 189 A. 782.
 

 In this class may also be included
 
 Skroki v. Crucible Steel Co.,
 
 292 Pa. 550, 141 A. 480, where acute dilatation of the heart resulted from unusual exertion in a hot room; and
 
 Watkins v. Pittsburgh Coal Co.,
 
 278 Pa. 463, 123 A. 461, in which the employee overexerted himself in climbing stairs.
 

 It must be conceded that the practical application of the doctrine of this class of cases is frequently difficult. While an accident is necessarily unusual, it does not follow that everything which is unusual amounts to an accident. Cf.
 
 Dolinar v. Pittsburgh Terminal Coal Corp.,
 
 140 Pa. Superior Ct. 543, 14 A. 2d 871, and
 
 Parks v. Miller Printing Machine Co.,
 
 336 Pa. 455, 9 A. 2d 742. In
 
 Weissman v. Philadelphia Electric Co.,
 
 111 Pa. Superior Ct. 353, 170 A. 318, it was said that the criterion of “unusualness” was not whether the act causing the injury was unusual generally speaking, but whether
 
 *463
 
 it was unusual and untoward in tlie course of the employment in which the employee was engaged.
 

 A discussion of cases in which a preexisting organic weakness was a factor would not be complete without reference to several where an employee, having such a weakness, was accidentally injured and died as a result of treatment necessitated by the accident.
 

 In
 
 Hornetz v. Philadelphia and Reading Coal and Iron Co., 277
 
 Pa. 40, 120 A. 662, held to be compensable, the index finger of the decedent’s right hand was accidentally fractured. A surgical operation was necessary, and the employee died as a result of dilatation of the heart caused by the anaesthetic. Cases of the same class are
 
 Yunker v. W. Leechburg S. Co.,
 
 109 Pa. Superior Ct. 220, 167 A. 443, where a weak heart gave way when the injured man saw a knife which was to be used in first aid treatment;
 
 Flowers v. Canuso and Son,
 
 115 Pa. Superior Ct. 234, 175 A. 287, where a diseased heart failed when serum was injected following an accidental injury.
 

 Another type of case, involving preexisting ailments, is illustrated by
 
 McCarthy v. General Electric Co.,
 
 293 Pa. 448, 143 A. 116. There the employee’s organic weakness caused him to fall. He suffered a concussion of the brain and died. The court pointed out that the death was caused by the fall, and not by the preexisting disease, and the fall was held to constitute an accident. True, the decedent would not have sustained the accident (i. e., the fall) had it not been for his organic ailment, but that fact was not deemed material. See also
 
 Horn v. Fitler Co.,
 
 115 Pa. Superior Ct. 188,175 A. 440, where the facts are substantially similar to those of the McCarthy case.
 

 Our conclusion in the case at bar is that claimant has failed to meet the burden resting upon her of showing, beyond mere conjecture, that her husband’s death resulted from an accident in the course of his employment, rather than from the natural progress of his preexist
 
 *464
 
 ing physical ailment. Her case is ruled by
 
 Lesko v. Lehigh Valley Coal Co.,
 
 supra, [270 Pa. 15, 112 A. 768];
 
 Pelusi v. Mandes et al.,
 
 109 Pa. Superior Ct. 439, 167 A. 456;
 
 McFadden v. Lehigh Navigation Coal Co.,
 
 111 Pa. Superior Ct. 501, 170 A. 314;
 
 Orlando v. Pa. R. R. Co.,
 
 133 Pa. Superior Ct. 588, 3 A. 2d 220;
 
 Minner v. Reno et al.,
 
 138 Pa. Superior Ct. 37, 9 A. 2d 909;
 
 Miller v. Lycoming Mfg. Co. et al.,
 
 135 Pa. Superior Ct. 558, 7 A. 2d 22; and the above cited recent decisions of our Supreme Court. It belongs in the first classification outlined above.
 

 Judgment reversed and here entered for appellants.
 

 [1]
 

 Lesko v. Lehigh Valley Coal Co.,
 
 270 Pa. 15, 112 A. 768;
 
 Fink v. Sheldon Axle and Spring Co.,
 
 270 Pa. 476, 113 A. 666;
 
 Riley v. Carnegie Steel Co.,
 
 276 Pa. 82, 119 A. 832;
 
 Mauchline v. State Insurance Fund,
 
 279 Pa. 524, 124 A. 168;
 
 Harring v. Glen Alden Coal Co.,
 
 332 Pa. 410, 3 A. 2d 381;
 
 Monahan v. Seeds and Durham et al.,
 
 336 Pa. 67, 6 A. 2d 889;
 
 Saroka v. Philadelphia and Reading Coal and Iron Co.,
 
 87 Pa. Superior Ct. 503;
 
 Mooney v. Yeagle,
 
 107 Pa. Superior Ct. 409, 164 A. 82;
 
 O’Neill v. Lehigh Coal and Navigation Co.,
 
 108 Pa. Superior Ct. 425, 165 A. 60;
 
 Blackwell v. Dahlstrom Co.,
 
 111 Pa. Superior Ct. 93, 169 A. 394;
 
 Rocco v. Ellsworth Collieries Co.,
 
 111 Pa. Superior Ct. 508, 170 A. 316;
 
 Swiderski v. Glen Alden Coal Co.,
 
 114 Pa. Superior Ct. 21, 173 A. 865;
 
 Whitecavage v. Philadelphia and Reading Coal and Iron Co.,
 
 116 Pa. Superior Ct. 540, 176 A. 757;
 
 Walsh v. Lockhart Iron and Steel Co.,
 
 118 Pa. Superior Ct. 467, 180 A. 123;
 
 Morris v. Lehigh Valley Coal Co.,
 
 121 Pa. Superior Ct. 493, 184 A. 266;
 
 McLaughlin v. P. H. Butler Co.,
 
 122 Pa. Superior Ct. 139, 186 A. 190;
 
 Burrell v. State Workmen’s Insurance Fund,
 
 127 Pa. Superior Ct. 510, 193 A. 439;
 
 Amentlar v. New Upper Lehigh Coal Co.,
 
 131 Pa. Superior Ct. 97, 198 A. 678;
 
 Sachs v. Mitchell,
 
 131 Pa. Superior Ct. 138, 199 A. 229;
 
 Fetrow v. Oliver Farm Equipment Sales Co.,
 
 132 Pa. Superior Ct. 39, 1 A. 2d 249;
 
 DiFazio v. J. G. Brill Co.,
 
 133 Pa. Superior Ct. 576, 3 A. 2d 216;
 
 Orlando v. Pennsylvania Railroad,
 
 133 Pa. Superior Ct. 588, 3 A. 2d 220;
 
 Elonis v. Lytle Coal Co.,
 
 134 Pa. Superior Ct. 264, 3 A. 2d
 
 *460
 
 995; and
 
 Byars v. Howard Cleaners, Inc.,
 
 140 Pa. Superior Ct. 188, 13 A. 2d 883.