Opinion by
 

 Cunningham, J.,
 

 Emil Lakott, the claimant in this workmen’s compensation case, was employed as a butcher or “boner” in a refrigerator room of defendant’s meat packing plant, for approximately three years prior to September 8, 1936. On that date he was obliged to quit work by reason of the painful condition of his feet and has been totally and permanently disabled ever since. Later, claimant required hospitalization, where, as a result of gangrene due to impeded circulation, his right leg was amputated below the hip on December 15, 1936, and a similar operation was performed on his left leg on March 25, 1937.
 

 Lakott sought compensation under our Workmen’s Compensation Act of June 2, 1915, P. L. 736, and its amendments, 77 PS §1, et seq., upon the theory that the loss of his legs was caused by an “injury by an accident in the course of his employment,” within the meaning of Section 301 of the statute, 77 PS §411, viz., by having his feet frostbitten as the result of exposure to excessive cold. Stated in other words, his theory
 
 *599
 
 was that his case falls within the second classification of compensable cases thus described by Mr. Justice Steen in
 
 Parks v. Miller P. Mach. Co. et al.,
 
 336 Pa. 455, 459, 9 A. 2d 742 — cases “where the work or act performed by the employee is voluntary, and not marked by any abnormal or unusual feature, but where there occurs an unexpected and unusual
 
 pathological result;
 
 that is to say, where the
 
 accident■
 
 resides in the extraordinary nature of the
 
 effect
 
 rather than in the
 
 cause.”
 
 (Italics supplied.) In a footnote at p. 459, it is suggested that frostbite should, on principle, be considered comparable with sunstroke and heat prostration. The mere fact that the exposure has been voluntary is not, in and of itself, a controlling factor. Disability following voluntary exposure to the rays of the sun is compensable because it is an unexpected and unusual pathological result of a known cause. See
 
 Consentino v. Union Paving Co.,
 
 113 Pa. Superior Ct. 295,173 A. 470 ; also
 
 Cutler v. Bergen & Essex Cons. Co. et al.,
 
 147 Pa. Superior Ct. 534, 25 A. 2d 75, in which we indicated some of the circumstances under which frostbite may be considered an accident.
 

 The defense interposed by the employer upon the merits of the case was that the claimant is the unfortunate victim of a preexisting chronic and progressive, though rare, disease of the arteries and blood vessels, known as Buerger’s disease; that while performing his usual work in the usual way, and without the happening of any unexpected external occurrence, he became disabled about September 8, 1936, solely through the normal progress and development of his preexisting ailment; and that the subsequent amputation of his legs was not attributable to exposure to excessive cold during the course of his employment or to any cause for which his employer was in any way responsible. The issues upon the merits of the case were, therefore, pure issues of fact. The referee made an award upon the theory that “claimant’s job required
 
 *600
 
 Mm to work, with wet feet, in a refrigerator room in which the temperature was very low” and colder than usual on September 8, 1936; that he had Buerger’s disease prior to that date; and that the temperature of the room was a “contributory factor in producing the disease and precipitating the gangrene he subsequently developed.”
 

 The board, however, after reviewing the record upon the employer’s appeal to it, set aside all the material findings of fact of the referee and, as it had a right to do, substituted its own. They, in effect, were that the room in which claimant worked was no colder on September 8, 1936, than it had been on many previous occasions; that the amputations of claimant’s legs were “caused by a natural affliction, to wit, Buerger’s disease, and not because of any accident,” within the meaning of the statute; and that “the wet floor and the atmospheric condition in the refrigerator on September 8, 1936, was not a contributing factor in aggravating the Buerger’s disease” and bringing about the amputations.
 

 The award of the referee was set aside and an order of disallowance of compensation entered. Claimant then appealed to the court below which, in an able opinion by Levinthal, J., dismissed his exceptions and entered judgment in favor of the employer; this appeal by the claimant followed.
 

 The single question of law with which we are concerned is whether the substituted findings of fact of the board are supported by substantial competent evidence.
 

 First, with respect to the finding of the referee (reversed by the board) that on September 8, 1936, a special brine had been added to the system which made the room unusually cold. Great stress is laid on this alleged fact throughout the appellant’s case. The board, upon weighing the testimony and passing upon the credibility of the witnesses, concluded this contention of appellant was not supported by the preponderance
 
 *601
 
 of the credible evidence. The evidence relative to this matter may be thus summarized:
 

 Eight hours a day and six days a week for three years appellant had been employed as a meat boner in one of appellee’s ice box or refrigeration rooms. He testified a carload of beef had arrived the night before and the engineer put additional brine in the refrigeration pipes of the box he worked in which made it colder than usual when he entered at six a.m. the morning of September 8, 1936. Appellant did not know what the exact temperatures were that day, only that it felt colder than usual to him and made him chilly. Under cross-examination, and examination by the referee, he stated, however, that the temperature of the ice box he worked in varied constantly, that it “was pretty much always that cold” (referring to the temperature of September 8, 1936), and that he “always” got his feet wet from the juice dripping from the frozen meat.
 

 Appellee’s engineer testified the temperature of the box appellant entered that morning was 46° Fahrenheit, 52° at noon and again 46° at six p.m. Appellee’s records showed the box was never below freezing during the year 1936, the lowest recorded temperature being about 34°. Moreover, appellant testified, in effect, that there was nothing unusual about fresh brine being added to the system overnight. He stated it was customary when new shipments of meat were received, approximately twice a week, to add special brine in order to preserve the fresh meat. An excerpt from his testimony reads: “Q. Didn’t they do that before? "Wasn’t that the usual practice whenever they had to make the room colder they would put this brine on? A. Yes. Q. Didn’t that happen numerous times over that three year period? A. I don’t get that. It was always cold, and when we got beef in, the boss called up the engineer to put more brine on. Q. That is what I mean, that had been done many times before? A. Yes.”
 

 
 *602
 
 Under this testimony the hoard was fully warranted, in the exercise of the powers exclusively committed to it, in setting aside the findings of the referee and substituting its own to the effect that appellant when stricken was not working under any abnormal or unusual conditions.
 

 Our next inquiry is whether the findings of the board that there was no connection, either by way of causation or aggravation, between the wet floors and atmospheric conditions under which appellant was working when disability overtook him and the preexisting Buerger’s disease with which he had admittedly been suffering for a long time, are supported by substantial competent testimony.
 

 Dr. H. S. Grahn, called by appellee, examined appellant May 13, 1937. He diagnosed his ailment as Buerger’s disease, or thrombo angiitis obliterans. An excerpt from his testimony reads: “Q. Doctor, in your opinion is the diagnosis of thrombo angiitis obliterans or Buerger’s disease a correct diagnosis as determined by the symptoms related to you by the claimant? A. Yes. Q. And will you just tell us the nature of that disease, is it something that happens suddenly or progressive and chronic? A. It is an inflammation, as I understand from what I read, of the membranes of the arteries, can affect the arms but mostly the legs, and these blood vessels are inflamed, they become rough and clot and that lessens the caliber of the blood vessels so much so that finally there is no blood supply and we have gangrene, and we know it takes several years, it is a progressive condition, it is not an acute condition.” In his opinion, the working conditions described by appellant neither caused nor aggravated his condition.
 

 Dr. Samuel Lisker, a specialist in diseases of the circulatory system, including Buerger’s disease, also called by appellee, described it as a progressive disease characterized by inflammation of the lining of the
 
 *603
 
 vessels of the arteries. In his opinion, exposure to cold could neither cause nor aggravate appellant’s condition, in fact had nothing to do with the disease at all, as people who lead sedentary lives in warm places were equally subject to the ailment. Dr. Lisker also stated that Buerger’s disease and grangrene resulting from freezing of the extremities are “so different it is impossible to confuse them.” Similar medical testimony may be found on page 342 of the report of the case of
 
 Savidge v. Dime T. & S. Co. et al.,
 
 108 Pa. Superior Ct. 333, 164 A. 734.
 

 The board quoted in the course of its opinion the following excerpts from the testimony of this witness: “Q. Is it your opinion that the cold temperature had nothing to do with the disease? A. I believe it had nothing to do with it....... Q. In your experience, and from your knowledge as a result of the research work that you did on circulatory diseases is Buerger’s disease characteristic of persons who work in a cold place? A. No, it is not characteristic. Q. Do people who live sedentary lives, who live and work in warm places, get it? A. They certainly do. Q. In your opinion, doctor, would the course of this disease have been the same if the claimant had not gone to work in a cold room on September 8, 1936? A. I think it would be the same.”
 

 Two medical experts, called by appellant, and an impartial expert appointed by the referee, expressed professional opinions at variance with those of Doctors Grahn and Lisker.
 

 Dr. M. H. Schneiman diagnosed his condition as chronic frostbite. He said he felt appellant’s working in the ice box was “definitely the cause, as well as an aggravating factor” of 'his disability.
 

 Appellant’s other physician, Dr. Arthur McGinnis, who did not examine him until June 11, 1938, in answer to a hypothetical question, expressed the opinion
 
 *604
 
 that appellant’s exposure to cold was the cause of and aggravated his condition. Neither of these physicians was satisfied that appellant really had Buerger’s disease.
 

 Dr. Thomas Shallow, the impartial physician, was of opinion that the temperature of the room in which appellant worked was a contributory factor in the development of the Buerger’s disease.
 

 The board also reviewed and considered the testimony of these last mentioned witnesses, but accepted the testimony of Doctors Grahn and Lisker and concluded that “the evidence discloses that [appellant’s] present condition is the natural culmination of a progressive weakness in his physical structure.”
 

 Confronted with this definite finding by the board, supported, as we have seen, by ample competent evidence, that none of the conditions or circumstances relied upon by appellant as entitling him to compensation had anything to do with causing or accelerating the distressing physical ailment which has totally disabled him, there is no occasion for further discussion or citation of authorities. As this record stands, both courts are bound by the findings of the board. This case clearly falls under the first classification of cases set out in
 
 Royko v. Logan Coal Co. et al..,
 
 146 Pa. Superior Ct. 449, 22 A. 2d 434. Nor need the contention of the appellee relative to lack of notice be considered. The assignments of error are severally overruled.
 

 Judgment affirmed.